Erick S. SCHMITT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 84S00–9905–CR–282.

Supreme Court of Indiana.

May 8, 2000.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

In this direct appeal, appellant Erick Schmitt claims the trial court erred in admitting Schmitt's confession into evidence over allegations that the police offered leniency in exchange for his statement.

A jury found Schmitt guilty of reckless homicide, a class C felony, Ind.Code § 35–42–1–5; felony murder, Ind.Code § 35–42–1–1; robbery, a class A felony, Ind.Code § 35–42–5–1; and attempted murder, a class A felony, Ind.Code § 35–41–5–1. The trial court sentenced him to seventy-five years.

## Statement of the Facts

On the night of March 10, 1998, Erick Schmitt and two friends, Ryan Specht and

Michelle Evans, held up the MotoMart, a gas station/convenience store located in western Vanderburgh County. Schmitt and Specht performed the robbery while Evans waited outside.

Both armed, the two men ran inside the gas station, with Schmitt in the lead. Upon entering, they discovered two people in the store the store, Charlie Simpson, the store clerk, and Brett Tracy, a customer. Schmitt fatally shot Simpson three times in the head and then shot Tracy once in the face. The two then quickly emptied the cash registers and fled the scene.

Tipped off by an informant, the police arrested Specht the following day; he confessed his part in the robbery and implicated Schmitt and Evans as accomplices. The police then moved to arrest Schmitt; they read him his *Miranda* rights, handcuffed him, and placed him in the back of a police vehicle. While Schmitt initially denied any involvement in the murder, upon seeing Specht in the backseat of a different police vehicle, he admitted participating.

After arriving at the police station, Schmitt was again read his *Miranda* rights. He signed a waiver of rights form, and agreed to give a videotaped statement. Schmitt then gave a detailed account of the incident, admitting his part in the shootings of Simpson and Tracy.

## Admissibility of Confession

■ Alleging that the investigating detectives promised the death penalty would not be pursued if he gave a confession stating his remorse for the shootings, Schmitt asserts that his confession was involuntary and inadmissible because it was obtained by a promise of mitigation of punishment. The State argues both that Schmitt's confession was knowing and voluntary and that the police tendered no offer of leniency.

■ In determining the voluntariness of a statement, the trial court must consid-

er the totality of the circumstances. *Fields v. State*, 679 N.E.2d 1315 (Ind. 1997). The trial court attempts to insure that a confession was not obtained "through inducement, violence, threats or other improper influences so as to overcome the free will of the accused." *Ellis v. State*, 707 N.E.2d 797, 801 (Ind.1999) (quoting *Collins v. State*, 509 N.E.2d 827, 830 (Ind.1987)).

■ The decision whether to admit a defendant's statement is within the discretion of the trial court. *Horan v. State*, 682 N.E.2d 502 (Ind.1997). When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness. *Jones v. State*, 655 N.E.2d 49 (Ind.1995). The State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. *Berry v. State*, 703 N.E.2d 154 (Ind.1998).

The trial court determined that Schmitt voluntarily and intelligently waived his right against self-incrimination when he provided a tape-recorded statement to Detectives Wedding and Craddock. We see more than ample evidence that Schmitt voluntarily and intelligently waived his rights. Schmitt acknowledged that the detective read him his rights twice. (R. at 591, 598.) Schmitt also voluntarily signed a waiver of rights form acknowledging his awareness and release of these rights. (R. at 596–98.) Moreover, Schmitt reassured the detectives a number of times during the conversation that he understood everything they were saying to him. (R. at 554–55.)[1]

Detective Wedding testified that he did not promise mitigated punishment. Similarly, he testified he never promised Schmitt would not get the death penalty. (R. at 608.) Moreover, it is significant that

1. During his statement, the following exchange occurred between Schmitt and Detective Wedding:

Detective: Remember I talked to you about, in the car, you know, I advised you of certain rights you have. Remember I

Schmitt confessed to the shootings only after viewing Specht in the back of another police car and being informed that the accomplice had already given a statement. (R. at 609.)

Schmitt also answered in the affirmative when asked if he had given his statement free of force, threats, or promises. (R. at 555). During his statement, Schmitt denied that any promises had been made to him in exchange for his confession. (*Id.*) Had leniency, in fact, been the deciding factor in Schmitt's decision to talk with police, it seems unusual that he did not acknowledge this agreement at the very beginning of his statement. Finally, Schmitt never requested to speak with an attorney regarding the charges and conversed freely with the detectives concerning the details of the shooting. (R. at 554–90.)

Examining the record, we find substantial, probative evidence of voluntariness to support the trial court's decision to admit Schmitt's confession.

### Conclusion

Accordingly, we affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

called those rights your *Miranda* rights, okay. We talked about that again on the way out here, okay, and you said that you wanted to talk to me, okay, and that you understood what I told you. Do you understand that?
Schmitt: Yes sir.
Detective: Okay, and what I am going to do is read this same thing to you basically what I said to you out there, okay. Before I ask you any questions, do you understand your rights, anything you say can be used against you in court, you have the right to take [sic] to a lawyer for advice before I ask you any questions, have them with you during questioning, if you cannot afford a lawyer one will be appoint for you before questioning if you wish. If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time. Okay, that's just what I told you basically out in the car and you said you wanted to talk to me. Is that correct?
Schmitt: (nods yes)
Detective: You understand what I just read you, is that correct?
Schmitt: Yes sir.
Detective: I have read the statement of rights. I understand what my rights are, and I am willing to make a statement and answer questions. I do not want a lawyer at this time and I understand what I am doing. *No promises or threats have been made to me and no pressure or coercion of any kinds has been used against me. Do you understand?* (emphasis added)
Schmitt: Yes sir.