William ALLEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0208–CR–408.

Court of Appeals of Indiana.

May 5, 2003.

Kimberly A. Jackson, Indianapolis, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

William Allen appeals his convictions for dealing in marijuana, dealing in cocaine, and possession of cocaine with a firearm. Specifically, Allen argues that the trial court erred in excluding a statement of a police officer that was made prior to Allen's arrest as hearsay. In addition, Allen argues that the trial court abused its discretion in admitting into evidence Allen's admission to police that the drugs and a firearm found in the house were his. Al-

len also argues that the prosecutor committed misconduct by commenting on Allen's post-arrest silence during the State's closing arguments. Finally, Allen argues that the State presented insufficient evidence to establish that he knowingly possessed the drugs and firearm used to support his convictions.

Because the statement of the police officer was a statement of a party-opponent, we find that it did not constitute hearsay, but we find that its exclusion was harmless error because it was merely cumulative of other evidence presented to the jury. In addition, we find that Allen's admission to police was voluntary and was therefore properly admitted into evidence. Because the prosecutor made no comments concerning Allen's post-arrest silence, we find that there was no prosecutorial misconduct. Finally, because the drugs and firearm were found in Allen's residence, he attempted to hide from police, and he admitted that the drugs were his and that he was watching over the firearm, we find that there is sufficient evidence to support his convictions and affirm.

### Facts and Procedural History

At approximately 7:30 p.m. on November 15, 2001, the Indianapolis Police Department served a search warrant at a house at 1616 Marlowe Avenue. Members of the SWAT Team first entered and secured the house before other police officers began searching the house. One person was detained outside the home, and six people were detained on the first floor of the house. Allen was asleep in an upstairs bedroom when the police arrived, and he ran to the attic in an attempt to hide from police. The police officers found Allen,

brought him downstairs, and read him his *Miranda* rights along with everyone else detained in the house.

During a search of the home, police found a loaded handgun in the upstairs bedroom where Allen had been sleeping. Police officers also found another gun in the front room of the house and a yellow laundry bag in the dining room. The laundry bag contained marijuana and a Crown Royal bag, which in turn contained two large individually wrapped baggies of cocaine along with four smaller baggies filled with cocaine. In addition, the police found marijuana in a wastebasket in a downstairs bathroom, and they found a silver scale with marijuana residue on it on top of the stove in the kitchen. The police also found documents in the house establishing that Allen lived in the house. After Allen was read his *Miranda* rights, he told police that he was holding the gun that was found upstairs for a friend. When Officer Joseph Kraeszig confronted Allen with the drugs that were found in the house, Allen told the police, "It's mine, all mine." Tr. p. 51.

On November 16, 2001, the State charged Allen with Count I, Dealing in Cocaine as a Class A felony;[1] Count II, Possession of Cocaine as a Class C felony;[2] Count III, Possession of Cocaine and a Firearm as a Class C felony;[3] Count IV, Possession of a Handgun with an Obliterated Serial Number as a Class C felony;[4] Dealing in Marijuana as a Class D felony;[5] and Possession of Marijuana as a Class D felony.[6] Following a trial, the jury found Allen guilty of all counts except for possession of a handgun with an obliterated seri-

1. Ind.Code § 35–48–4–1.
2. Ind.Code § 35–48–4–6(b)(1)(A).
3. Ind.Code § 35–48–4–6(b)(1)(B).
4. Ind.Code § 35–47–2–18.
5. Ind.Code § 35–48–4–10.
6. Ind.Code § 35–48–4–11.

al number. At sentencing, the trial court merged Allen's conviction for possession of cocaine with the conviction for dealing in cocaine and Allen's conviction for possession of marijuana with the conviction for dealing in marijuana. The trial court then sentenced Allen to twenty years for dealing in cocaine with twenty years suspended and four years on probation, six years for possession of cocaine and a firearm with four years suspended, and a suspended sentence of eighteen months for dealing in marijuana. The trial court ordered that Allen serve all of the sentences concurrently with the executed portion on home detention. This appeal ensued.

### Discussion and Decision

Allen raises a number of issues on appeal. First, he argues that the trial court abused its discretion in excluding on hearsay grounds the statements made by a police officer prior to Allen's arrest because those statements were of a party-opponent. Second, Allen argues that the trial court abused it discretion in admitting Allen's admission to police into evidence because the admission was involuntary and thus inadmissible. Third, Allen argues that the prosecutor committed misconduct by commenting on Allen's post-arrest silence. Finally, Allen argues that the State presented insufficient evidence to support his convictions. We address each argument in turn.

### I. Statement of a Party–Opponent

Allen argues that the trial court erred in excluding a statement made by a police officer prior to Allen's arrest as hearsay testimony. Specifically, Allen argues that the police officer's statement was a statement of a party-opponent and therefore could not be hearsay. Typically rulings on admitting or excluding evidence are reviewed for an abuse of discretion. *Hirsch v. State*, 697 N.E.2d 37, 40 (Ind. 1998). However, a ruling is reviewed de novo when it turns on a misunderstanding of a rule of evidence, specifically the hearsay rule. *Id.* The Indiana Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c); *City of Indianapolis v. Taylor*, 707 N.E.2d 1047, 1055 (Ind.Ct.App.1999), *trans. denied.*

In this case, Allen challenges the trial court's decision to exclude evidence of statements made by police shortly before Allen admitted that the drugs and guns found in the house were his. During his testimony, Officer Kraeszig denied that he told or implied to Allen that if Allen did not admit that the guns and drugs were his then everybody in the house would be arrested. Tr. p. 88. However, during his case-in-chief, Allen presented the testimony of Patricia Schlarb, an individual who was detained in the house at the time of the police search. During Schlarb's testimony the following exchange occurred:

Q. Did you come to believe that if somebody didn't admit to these drugs everyone would go to jail?

A. Yes.

Q. How did you arrive at that belief?

A. Cause that's what one of the officers said.

Q. What did they say?

A. They said if you don't admit to things being yours . . . that I am going to take you . . .

[Prosecutor]: Objection Your Honor. It's hearsay.

Witness: We will take everyone in this house.

[Prosecutor]: Objection Your Honor. Hearsay.

[Defense counsel]: I object.

The Court: Hold on, hold on. Sustained. We will show the answer stricken.

[Defense counsel]: Judge, for the record it is the statement of the party opponent, the police officer is an agent of the state. It's not hearsay under Rule 801.

The Court: Okay, we'll note that for the record.

Tr. p. 214–15.

█ While there are a number of possible arguments Allen could have raised at trial for the admissibility of the police statement, Allen is now limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility for the first time on appeal. *Taylor v. State*, 710 N.E.2d 921, 923 (Ind.1999). At trial, Allen argued that the police officer's statement was admissible because it was the statement of the party-opponent and thus not hearsay. A statement is not hearsay if the "statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity; or ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" Ind. Evidence Rule 801(d)(2); *City of Indianapolis v. Taylor*, 707 N.E.2d at 1057.

While this Court has held that the statement of the arresting officer or another police officer would not be hearsay when it was used in a wrongful death case against two police officers and the City of Indianapolis because it was a statement by a party-opponent, we are unable to find any Indiana cases addressing the issue of whether a statement of a government employee in a criminal case constitutes a statement of a party-opponent. *City of Indianapolis v. Taylor*, 707 N.E.2d at 1057. However, this issue has been addressed by numerous federal jurisdictions with varying results. While federal authority is not binding, this Court may consult federal authority for guidance in interpreting Indiana Rules. *Gerald v. Turnock Plumbing, Heating & Cooling, LLC*, 768 N.E.2d 498, 503 (Ind.Ct.App.2002).

The United States Seventh Circuit Court of Appeals has refused to apply the federal equivalent to Indiana's party-opponent rule, Federal Rule of Evidence 801(D)(2), to government employees testifying in criminal trials. *United States v. Prevatte*, 16 F.3d 767, 779 n. 9 (7th Cir. 1994); *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir.1979). In rejecting the rule's application the Seventh Circuit noted:

> Prior to adoption of the Federal Rules of Evidence, admissions by government employees in criminal cases were viewed as outside the admissions exception to the hearsay rule. Because the agents of the Government are supposedly disinterested in the outcome of a trial and are traditionally unable to bind the sovereign their statements seem less the product of the adversary process and hence less appropriately described as admissions of a party. Nothing in the Federal Rules of Evidence suggests an intention to alter the traditional rule and defendant has cited no truly contrary case indicating such a trend.

*Kampiles*, 609 F.2d at 1246 (citations omitted). However, the D.C. Circuit has used the party-opponent rule against the government in criminal cases after finding that there was nothing in the history of the Federal Rules to "suggest that it does not apply to the prosecution in criminal cases." *United States v. Morgan*, 581 F.2d 933, 938 (D.C.Cir.1978); *see also United States v. Warren*, 42 F.3d 647, 655 (D.C.Cir.1994). While not deciding whether the entire federal government would be deemed a party-opponent, the United States First Circuit

Court of Appeals agreed that "'the Federal Rules clearly contemplates that the federal government is a party-opponent of the defendant in criminal cases'" and found that the Justice Department would be a party-opponent in a criminal case. *United States v. Kattar,* 840 F.2d 118, 130 (1st Cir.1988) (quoting *Morgan,* 581 F.2d at 937 n. 10).

After weighing the different positions taken by the varying federal circuits in interpreting their rules of evidence, we find that the party-opponent provision in the Indiana Rules of Evidence applies in criminal cases to statements by government employees concerning matters within the scope of their agency or employment. As we have already found that the Indiana rule on party-opponent statements applies against the government in civil cases, we see no reason why it should not apply in criminal cases. *City of Indianapolis v. Taylor,* 707 N.E.2d at 1057. Moreover, there is nothing in the language or history of Indiana Evidence Rule 801(d)(2) limiting its application against the government. Indeed, unlike its federal counterpart, "[t]he Indiana rule uses the sub-heading 'Statement by Party–Opponent' rather than 'admission by party-opponent' to underscore the point that the party's statement need be neither a confession nor an admission against interest to fall within this exception to the definition of hearsay." 13 Robert Lowell Miller, Jr., *Indiana Evidence* § 801.416 at 542–43 (2d ed.1995). Thus, the concerns expressed by the Seventh Circuit relating to admissions and the adversarial process would not be applicable to the Indiana Rules of Evidence. Furthermore, the application of the party-opponent provision against the government in criminal cases also advances a general concept of fairness:

> The evenhandedness of justice as between subject and sovereign is a reassuring doctrine, and especially so its corollary: that, at a minimum the law of evidence regulates the mode of proof impartially for the subject and for the sovereign. The hearsay rule that troubles the former equally vexes the latter; the exceptions to the hearsay rule that ease the latter equally comfort the former.

*Garland v. State,* 834 So.2d 265, 267 (Fla. Dist.Ct.App.2002) (quoting Irving Younger, *Sovereign Admissions: A Comment on United States v. Santos,* 43 N.Y.U. L.Rev. 108, 115 (1968)). As we find that Indiana Evidence Rule 801(d)(2) applies to the government in criminal cases, we conclude that the trial court in this case erred by excluding a statement made by a police officer of a matter within the scope of the officer's employment because that statement is not hearsay.

■ However, our analysis in this case does not end with our conclusion that the trial court erred in excluding the police officer's statement. When a statement has been excluded from evidence which was not, in actuality, hearsay, this Court will review the trial court's decision under a harmless error analysis. Ind. Trial Rule 61; *Sylvester v. State,* 698 N.E.2d 1126, 1129 (Ind.1998), *reh'g denied; City of Indianapolis v. Taylor,* 707 N.E.2d at 1055. "An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties." *Sylvester,* 698 N.E.2d at 1129. Where the wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error. *Id.* at 1130. In this case, the statement excluded as hearsay would have been merely cumulative of other evidence presented to the jury. Schlarb testified that she came to believe that if somebody did not admit to possessing drugs then everyone detained in the house would

go to jail because that is what one of the officers said to the group. Thus, the jury had a clear picture of what was said, even if it did not hear a verbatim retelling of the police officer's words. Nevertheless, the jury did not accept that Allen's admission was fabricated. Therefore, we conclude that the exclusion of the police officer's exact words likely had little effect on the jury's decision, did not substantially affect Allen's rights, and was harmless error.

## II. Allen's Admission

Allen also asserts that the trial court abused its discretion in admitting into evidence Allen's statement to the police officers concerning the drugs and guns found in his house. At trial, over Allen's objection, the State introduced evidence that Allen told the police that the gun that was found upstairs belonged to a friend and that he was watching it for his friend. Tr. p. 36–42. In addition, the State introduced evidence, over Allen's objection, that Allen told the police, "It's mine, all mine" when confronted with the drugs found in the house. Tr. p. 50–51. Allen argues that these admissions were involuntary and thus inadmissible.

The decision to admit Allen's statements is a matter of discretion of the trial court after considering the totality of the circumstances. *Kahlenbeck v. State,* 719 N.E.2d 1213, 1216 (Ind.1999). "In looking at the totality of the circumstances from all the evidence, many factors may be considered including: the crucial element of police coercion; the length of the interrogation; its location; its continuity; the defendant's maturity; education; physical condition; and mental health." *Miller v. State,* 770 N.E.2d 763, 767 (Ind.2002) (citations omitted). In making its decision the trial court attempts to insure that a confession was not obtained "through inducement, violence, threats or other improper

influences so as to overcome the free will of the accused." *Schmitt v. State,* 730 N.E.2d 147, 148 (Ind.2000) (quotation omitted). The State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights and that the defendant's confession was voluntarily given. *Id.* "When reviewing a challenge to the trial court's decision, we examine the record for substantial, probative evidence of voluntariness; we do not reweigh the evidence." *Kahlenbeck,* 719 N.E.2d at 1216.

The record reveals that Allen was sleeping in an upstairs bedroom when the SWAT team entered the house at approximately 7:30 p.m. Upon hearing the police enter the house, Allen ran to the attic and hid. When the police eventually discovered Allen in the attic, he was lying on the floor with a cell phone in his hand. According to Allen, "I scared them and at that time I had a cell phone in my hand and I believe that the only reason why they took action like they did was because they thought it was a gun or something." Tr. p. 175. Allen then testified that the police officers kicked him and hit him and that he received a cut on his leg that required stitches during a later hospital visit. However, Officer Kraeszig testified that he did not observe any injuries on Allen. A photograph taken of Allen at the time of his arrest also does not appear to show any visible injuries. Tr. p. 216–17; Exhibit 24.

Police officers then took Allen downstairs and placed him with the other people detained in the house. The police then read all of the people, including Allen, their *Miranda* rights, and Allen indicated that he understood his rights. Officer Kraeszig testified that he then asked Allen about the gun found in the upstairs bedroom and Allen told him that the gun belonged to a friend and that he was

watching it for his friend. Officer Kraeszig then confronted Allen with the drugs found in the house, and Allen replied, "It's mine, all mine." Tr. p. 50–51. While Schlarb testified that the police told them that if somebody did not admit to the drugs then everybody would go to jail, Officer Kraeszig testified that he never told that to Allen. At the time of his arrest, Allen was twenty-one years old and was a member of the national guard. In addition, Allen had been an honor roll student until he dropped out of high school.

Based on the totality of the circumstances, we find that the trial court did not err in concluding that Allen voluntarily and intelligently waived his rights when he admitted that the drugs were his and that he was watching over the handgun that was discovered. Allen's appeal is simply a request for us to reweigh the evidence, which we must decline. Even though Schlarb's testimony supported Allen's claim that the other people in his home were threatened with arrest if somebody did not confess, this testimony was contradicted by Officer Kraeszig, and the jury was not bound to credit Schlarb's testimony. *Turner v. State,* 738 N.E.2d 660, 662 (Ind.2000). While there is conflicting evidence as to whether Allen sustained an injury during the arrest, it does not appear that the injury was a result of police misconduct or coercion. The record reveals that the police informed Allen of his *Miranda* rights before the interrogation began and Allen indicated that he understood those rights, the interrogation took place in his own home shortly after the police entered the building, and it was brief. In addition, Allen appears to be at least of average intelligence, and he was not intoxicated or sleep-deprived during his interrogation. Thus, the trial court did not abuse its discretion by admitting Allen's statement into evidence.

### III. Prosecutorial Misconduct.

Allen also argues that there was alleged prosecutorial misconduct during closing arguments because the State made a reference to his post-arrest silence. It is plainly improper for a prosecutor to comment on a defendant's post-arrest silence. *Taylor v. State,* 689 N.E.2d 699, 706 (Ind. 1997). However we find that the prosecutor did not comment on Allen's post-arrest silence during closing arguments. During the State's closing arguments, the prosecutor made the following comment:

> So the defendant may have had an unpleasant experience with the officers. I don't believe that there's any corroborative evidence to say that it was excessive. And furthermore, there's no evidence or corroborative evidence to state that anything he did after that point was in any way coerced. Again, there was no gun to his head at the time he made the statements about drugs. He was not in some room with a big light on him, saying you know, you admit this, you admit this. That didn't happen. Nobody was forcing him to say that. Nobody was threatening him to say that.... Again, I believe that what the police did from all accounts was reasonable. *And certainly had nothing to do with the admission that he made well after the fact after he had been read his* Miranda *rights. After he (unintelligible) consulted an attorney and remained silent he made that none the less.* Without being coerced, he was asked by Officer Kraeszig and he answered the question.

Tr. p. 258–59. While it is unfortunate that a key portion of the prosecutor's closing argument is unintelligible, it is apparent from the surrounding language that the prosecutor's comment concerned police conduct and the voluntariness of Allen's

admissions after he was read his *Miranda* rights. Taken in context, the brief statement that Allen "remained silent" was not a comment on Allen's post-arrest silence. Therefore, we find that there was no prosecutorial misconduct because the prosecutor did not comment on Allen's post-arrest silence.

### IV. Sufficiency of the Evidence

Finally, Allen argues that there is insufficient evidence to sustain his convictions. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Whitney v. State*, 726 N.E.2d 823, 825 (Ind.Ct.App.2000). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Allen of Dealing in Cocaine as a Class A felony, the State had to establish that: (1) he possessed cocaine; (2) in an amount greater than three grams; (3) with the intent to deliver the cocaine. Ind.Code § 35–48–4–1; *Caruthers v. State*, 698 N.E.2d 765, 765 (Ind.1998). To convict Allen of possession of cocaine with a firearm, the State had to prove that Allen knowingly or intentionally possessed cocaine while also in possession of a firearm. Ind.Code § 35–48–4–6(b)(1)(B). Finally, in order to convict Allen of dealing in marijuana in an amount over thirty grams, the State was required to prove that Allen (1) possessed marijuana; (2) in an amount over thirty grams; (3) with the intent to deliver the marijuana. Ind.Code § 35–48–4–10(a)(2)(C) and (b)(1)(B); *Ladd v. State*, 710 N.E.2d 188, 190 (Ind.Ct.App.1999). In challenging the sufficiency of the evidence against him, Allen only asserts that the State presented insufficient evidence to establish that he knowingly possessed the cocaine, marijuana, and firearm found in his house.

In the absence of actual possession of drugs and firearms, constructive possession may support a conviction for a drug offense. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind.1999). Constructive possession will support a possession conviction if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband. *Mitchell v. State*, 745 N.E.2d 775, 789 (Ind.2001); *Lampkins v. State*, 685 N.E.2d 698, 699 (Ind.1997).

In order to establish constructive possession, the State must demonstrate that the defendant had the capability to maintain dominion and control over the contraband. "Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found." *Martin v. State*, 175 Ind.App. 503, 507, 372 N.E.2d 1194, 1197 (1978). "Proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question." *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind.1984). A defendant's possessory interest in the premises does not require his actual ownership of the premises. *Martin*, 175 Ind.App. at 507, 372 N.E.2d at 1197. "[A] house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee." *Id.* In this case, the State presented evidence that

Allen received his mail at the address where the drugs and firearm were located. In addition, Allen testified that he lived at the house. Therefore, we find that he had the capability to maintain dominion and control over the drugs and firearm found in his house.

In arguing that there was insufficient evidence to establish possession, Allen notes that a number of people resided and were present at his house at the time of the police search. Where a person's control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband. *Mitchell,* 745 N.E.2d at 789. These additional circumstances have been found to include (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. *Ladd,* 710 N.E.2d at 190. In this case, the State presented and Allen testified that he attempted to hide when the police entered the home. More importantly, the State introduced evidence that Allen admitted that the drugs were his and that he was watching over the firearm for his friend. We therefore find that the State presented sufficient evidence to establish that Allen knowingly possessed the cocaine, marijuana, and firearm found in his house, and we affirm the judgment of the trial court.

Judgment affirmed.

DARDEN and NAJAM, JJ., concur.