Robert P. **BENAVIDES**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A02–0304–CR–352.

Court of Appeals of Indiana.

May 19, 2004.

Transfer Denied Aug. 26, 2004.

Kelly N. Bryan, Public Defender, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Robert P. Benavides appeals his convictions for burglary, two counts of robbery, and two counts of criminal confinement for his role in the robbery of Jason Smith and Crystal Mullis. Although the audiotape of the 911 call, which captured the crime in progress, contained inaudible portions, the tape was nevertheless admissible because it showed that a robbery occurred, contradicting Benavides' version of events. Because the confinement of Crystal was more extensive than that necessary to commit the robbery, Benavides' convictions for the robbery and confinement of Crystal do not violate the actual evidence test of Indiana's Double Jeopardy Clause. However, we reverse Benavides' conviction for the robbery of Jason because Jason neither possessed nor had control of the property taken.

### Facts and Procedural History

The facts most favorable to the verdict reveal that around 11:00 p.m. on December 8, 2002, Jason and Crystal heard someone knocking on the front door of their Muncie apartment. Because Jason did not recog-

nize the man at the door, he told the man to leave. Moments later, Jason and Crystal saw two men walking by their bedroom window. When the men started kicking the front door, Jason instructed Crystal to call 911. While Crystal was on the phone with the 911 operator, the two men, identified at trial as Benavides and Donald Green, broke through the front door. Benavides was carrying a black semi-automatic gun, and Green was armed with a knife. At this point, Crystal dropped the phone. The phone did not disconnect, so there was still an open line with the 911 operator. Crystal started screaming hysterically, and she and Jason ran into their bedroom and slammed the door. Benavides and Green, however, were able to force the door open. Benavides put his gun to Crystal's head and then forced her into the living room while Green kept Jason in the bedroom at knifepoint.

Once in the living room, Benavides, while still pointing his gun at Crystal, ordered her to give me all your f* * * * * * money. Tr. p. 138. Crystal gave Benavides approximately $700 in cash from her purse as well as marijuana and a prescription bottle containing vicodin. Part of the $700 that Crystal gave Benavides came from the sale of Jason's car and Jason's job; the remainder came from Crystal's mother to help them pay bills. Benavides and Green then left the apartment. Crystal returned to the phone with the 911 dispatcher and provided additional information.

Police later apprehended Benavides and Green after a car pursuit, and Jason and Crystal independently identified both of them from a photo array. The State subsequently charged Benavides with Burglary as a Class B felony,[1] two counts of

Robbery as Class B felonies (one for Jason and one for Crystal),[2] and two counts of Criminal Confinement as Class B felonies (one for Jason and one for Crystal).[3] During trial, the court, over Benavides' objection, admitted into evidence the audiotape of Crystal's 911 call. Following trial, the jury found Benavides guilty as charged, and the trial court sentenced him to twenty years on each count, to be served concurrently. This appeal ensued.

## Discussion and Decision

Benavides raises four issues on appeal, which we consolidate into three. First, he contends that the trial court erred by admitting into evidence the audiotape of Crystal's 911 call because portions of the call were unintelligible. Second, Benavides contends that his convictions for the robbery and criminal confinement of Crystal violate the actual evidence test of Indiana's Double Jeopardy Clause. Third, Benavides contends that the evidence is insufficient to support his conviction for the robbery of Jason. We address each contention in turn.

### I. Audiotape of 911 Call

■ Benavides first contends that the trial court erred by admitting into evidence the audiotape of Crystal's 911 call. A trial court has wide discretion in deciding whether to admit an audiotape into evidence. *Dearman v. State*, 743 N.E.2d 757, 759 (Ind.2001). We will not reverse the trial court's decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial. *Carpenter v. State*, 786 N.E.2d 696, 702–03 (Ind.2003). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* at 703.

---

**1.** Ind.Code § 35–43–2–1(1).

**2.** Ind.Code § 35–42–5–1(1).

**3.** Ind.Code § 35–42–3–3(a)(1), (b)(2)(A).

Specifically, Benavides argues that portions of the 911 call are unintelligible, causing the jury to speculate about its contents. In *Lamar v. State*, the Indiana Supreme Court held that one of the foundational requirements for admitting an audiotape into evidence is that it be of such clarity as to be intelligible and enlightening to the jury. Otherwise, it serves no beneficial purpose[.] 258 Ind. 504, 282 N.E.2d 795, 800 (1972).

■ This rule requires that the audiotape be intelligible enough to be probative of the purpose for which it is being offered. And necessarily, the probative value must not be substantially outweighed by the danger of confusion or unfair prejudice. *See* Ind. Evidence Rule 403. The vast majority of cases addressing whether an audiotape is intelligible and enlightening to the jury involve situations where the meaning of the words on the tape is the reason that the tape is probative, for example: custodial interrogations of defendants, defendants' statements to police, and confidential informants wearing wire transmitters. *See, e.g., Coleman v. State,* 750 N.E.2d 370, 372 (Ind.2001); *Dearman,* 743 N.E.2d at 759; *Kidd v. State,* 738 N.E.2d 1039, 1041 (Ind.2000), *reh'g denied; Lamar,* 282 N.E.2d at 797; *Newman v. State,* 751 N.E.2d 265, 270 (Ind.Ct.App. 2001), *trans. denied; Lahr v. State,* 640 N.E.2d 756, 761 (Ind.Ct.App.1994), *trans. denied; Roller v. State,* 602 N.E.2d 165, 167 (Ind.Ct.App.1992), *trans. denied.*

In this case, however, the audiotape of Crystal's 911 call was not admitted for the primary purpose of showing the meaning of the words on the tape. Rather, the State introduced the audiotape to show that a robbery occurred and to attack Benavides' version of events—both of which could be shown without understanding what was being said during the unintelligible portions of the audiotape. According

to Benavides' trial testimony, he spoke with Jason earlier in the day and made plans to come over that night. When he and Green went to Jason and Crystal's apartment later that night, the front door was open. He testified that he walked right in their apartment because Jason gave him permission earlier that day to do so. When Benavides entered the apartment, he saw Crystal sitting on the couch and not talking on the telephone. Benavides also testified that as soon as he entered the apartment, Jason threw him a bag of marijuana. When Benavides informed Jason that he was not going to pay for the marijuana, a scuffle ensued, causing Crystal to become hysterical. Benavides denied having a gun and admitted to committing only theft.

In contrast, the audiotape begins by Crystal telling the 911 operator that someone was trying to break into their apartment. Shortly into the call, Benavides and Green broke through the front door. At this point, Crystal dropped the phone and became hysterical. Almost everything that is said after this point is unintelligible, due to Crystal's hysterical screaming and yelling among the men. In fact, when Crystal returned to the phone after Benavides and Green left the apartment, she was still so hysterical that the 911 operator had to calm her down before obtaining additional information.

The State did not offer the audiotape to create speculation as to what was being said during the unintelligible portions. Instead, the State offered the audiotape to contradict Benavides' version of events in many respects, including his assertions that he had Jason's permission to enter the apartment and that Crystal was not on the telephone, and to show that a violent crime more serious than theft was being committed due to Crystal's hysterics. The audiotape was intelligible for these pur-

poses and, in turn, was enlightening to the jury. Further, the probative value of the contents of the tape was not substantially outweighed by the danger of confusion or unfair prejudice. Because the audiotape was intelligible for the purposes for which it was offered and enlightening to the jury, the trial court did not abuse its discretion by admitting into evidence the audiotape of Crystal's 911 call.

## II. Double Jeopardy

■ Benavides next contends that his convictions for the robbery and criminal confinement of Crystal violate the actual evidence test of Indiana's Double Jeopardy Clause. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Spivey v. State,* 761 N.E.2d 831, 832 (Ind.2002). Generally, double jeopardy does not prohibit convictions for criminal confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. *Hopkins v. State,* 759 N.E.2d 633, 639 (Ind.2001); *Seide v. State,* 784 N.E.2d 974, 978 n. 4 (Ind.Ct.App.2003). In these circumstances, criminal confinement is a separate criminal transgression. *Hopkins,* 759 N.E.2d at 639; *Seide,* 784 N.E.2d at 978 n. 4.

In *Hopkins,* our supreme court explained that the defendant's confinement of the victims extended well beyond what was necessary to rob them because the defendant forced his victims into a basement at gunpoint, robbed them, and then went upstairs to search the house. 759 N.E.2d at 640. The court observed that it was not necessary to force the victims into

the basement to rob them or to force them to stay in the basement as he searched the house. *Id.* Based on the protracted nature of the incident, the court concluded that there was no sufficient substantial likelihood that the jury used the same evidentiary facts to convict Hopkins of robbery and criminal confinement. *Id.*

Likewise, here Benavides confined Crystal in the bedroom at gunpoint before forcing her into the living room where he took money, marijuana, and prescription pills. Because the confinement was more extensive than that necessary to commit the robbery, there is no reasonable possibility that the jury used the same evidentiary facts to convict Benavides of robbery and criminal confinement.

## III. Sufficiency of the Evidence

■ Benavides lastly contends that the evidence is insufficient to support his conviction for the robbery of Jason because he did not take money from Jason or the presence of Jason. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Allen v. State,* 787 N.E.2d 473, 482 (Ind.Ct.App.2003), *trans. denied.* We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

■ Indiana Code § 35–42–5–1 provides that a person who knowingly or intentionally takes property from another person or from the presence of another person, (1) by using or threatening the use of force on any person or (2) by putting any person in fear, commits robbery. In addressing whether Benavides can be convicted of the

robbery of Jason, both parties focus their arguments on the ownership of the money taken from Crystal's purse and direct our attention to cases involving the robbery of a business. However, a defendant can still commit robbery when the property taken is not owned by the victim. *Highbaugh v. State,* 773 N.E.2d 247, 251 (Ind.2002). Therefore, ownership of the money is not dispositive, and we find the cases cited by the parties inapplicable.

 Instead, to satisfy the requirement that property be taken from another person or the presence of another person, the person must possess the property or the property must be under the personal protection of the person. *Id.* at 252; *Paul v. State,* 612 N.E.2d 1060, 1062 (Ind.1993); *see also* Charles E. Torcia, 4 *Wharton's Criminal Law* 53 (15th ed. 1996) ( [I]t is essential that [the person] have possession or control of the property because, by definition, property cannot be taken from the person or presence of another unless he had possession or control of the property.). We now address whether Jason had possession or control of the money at the time of the robbery.

The evidence shows that after Benavides threatened Jason, Green held him at knifepoint in the bedroom while Benavides forced Crystal into the living room at gunpoint. Once in the living room, Benavides instructed Crystal to give him all her money. Crystal then gave Benavides $700 in cash from her purse. It is undisputed that Jason did not have possession of the money at the time of the robbery. Furthermore, Jason did not have control over the money, nor was it under his personal protection, because the money was located in Crystal's purse. *See Krise v. State,* 746 N.E.2d 957, 970 (Ind.2001) (observing that society accepts as objectively reasonable that persons have a legitimate expectation of privacy in their purses). Because Jason

neither possessed the money nor had control of it, the evidence is insufficient to prove that Benavides took money from the presence of Jason. Accordingly, we reverse Benavides' conviction for the robbery of Jason.

Affirmed in part and reversed in part.

SHARPNACK, J., and MATHIAS, J., concur.