## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 26 2019, 8:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis P. Bell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 26, 2019<br><br>Court of Appeals Case No.<br>19A-CR-321<br><br>Appeal from the Pulaski Superior<br>Court<br><br>The Honorable Crystal A. Kocher,<br>Judge<br><br>Trial Court Cause No.<br>66D01-1706-F6-99 |

**Darden, Senior Judge.**

# Statement of the Case

Dennis P. Bell appeals his convictions of possession of methamphetamine, a Level 6 felony;[1] and possession of paraphernalia, a Class C misdemeanor.[2] We affirm.

# Issues

Bell raises two issues, which we restate as:

    I.    Whether the trial court erred in denying Bell's motion for discharge.

    II.    Whether there is sufficient evidence to support his convictions.

# Facts and Procedural History

On June 19, 2017, at 2:25 a.m., Deputy Robert P. Foerg of the Pulaski County Sheriff's Office was on patrol. He stopped a car after he saw it drive left of center while making a sharp turn. Bell was driving the car, and Kassie Gould was sitting in the front passenger seat. Deputy Foerg recognized them from past encounters.

---

[1] Ind. Code § 35-48-4-6.1 (2014).

[2] Ind. Code § 35-48-4-8.3 (2015).

[4]     Deputy Foerg obtained their drivers' licenses and the car's registration and license plate number. He entered the information on his car's computer and determined Bell's and Gould's licenses were valid. The deputy also learned the car was registered to Sherie McCrory, who he later discovered was Bell's girlfriend. Next Deputy Foerg asked for backup, and another officer arrived.

[5]     Deputy Foerg returned to Bell's car and asked him to step out for a pat down search for officer safety. Bell complied, and the officer did not find any weapons. At that point, Deputy Foerg issued an oral warning to Bell for driving left of center and then asked if he could search the car. Bell consented to a search. Bell denied having any illegal substances in the car.

[6]     Deputy Foerg also asked Gould to step out of the car and patted her down. She did not have any weapons, so he next had Bell and Gould stand with the other officer while he searched Bell's car. During the search, which was recorded on Deputy Foerg's body camera, he found a "cut plastic straw on the front passenger seat which contained a white powder." Tr. Vol. 2, p. 190. He also found a package of straws on the floor in front of the passenger seat. The deputy then found a "pen tube that looked like it had a white powdery substance in it as well." *Id.* at 191-92. Based on his experience and training, Deputy Foerg was aware that straws and pen tubes are items commonly used to ingest controlled substances. He field-tested the straw, and it tested positive for methamphetamine.

[7] The officers arrested Bell and Gould. After being handcuffed, Bell mumbled the name "Oscar," but did not explain further. Tr. Vol. 2, p. 195. A portion of the straw was sent to the Indiana State Police Laboratory, and further testing confirmed that the straw contained methamphetamine.

[8] On June 20, 2017, the State charged Bell with possession of methamphetamine, a Level 6 felony; maintaining a common nuisance, a Level 6 felony;[3] and possession of paraphernalia, a Class C misdemeanor. That same day, the trial court issued an order determining that probable cause existed for the initial arrest. The trial court set bond in the sum of $5,000, 10% payable by cash or surety, and, apparently, set the matter for an initial hearing on July 13, 2017. Bell bonded out on June 20, 2017.

[9] On July 13, 2017, the trial court held an initial hearing. Bell did not appear. The trial court issued an order indicating that an unidentified person had informed the trial court that Bell was "incarcerated in the Porter County Jail." Appellant's App. Vol. II, p. 24. The order further provided that upon the State's request, the trial court issued a warrant for Bell's arrest, ordering that he be held without bond upon apprehension. The trial court's Chronological Case Summary is void of any notation of personal contact by Bell for approximately the next six to seven months.

---

[3] Ind. Code § 35-45-1-5 (2016).

[10] Finally, on February 5, 2018, Bell filed with the trial court a pro se letter asking the court to schedule a new hearing date in his case. He apparently did not send a copy of the letter to the State via the prosecutor's office. In his letter, Bell acknowledged he had failed to appear in court and explained he had been incarcerated in the Porter County Jail since July 12, 2017. He further explained that he expected to be released by April 2, 2018. Later that day, the trial court issued an order in which it interpreted Bell's letter as a request to recall the arrest warrant. The trial court denied Bell's request to recall the warrant that had been issued on July 13, 2017.

[11] The Chronological Case Summary indicates that the arrest warrant was served on Bell on March 12, 2018. The trial court held an initial hearing on March 13, 2018. At the hearing, Bell appeared pro se and informed the trial court that he intended to hire an attorney. The trial court scheduled a pretrial hearing for April 30, 2018, and set an omnibus date of May 11, 2018. The trial court did not set a trial date at that time. Bell asked to be released on his original bond, but the trial court rejected his request and set bond at $10,000, with 10 percent cash or surety.

[12] The trial court held a pretrial hearing as scheduled on April 30, 2018. Bell, again, appeared pro se. The trial court scheduled a final pretrial conference for June 12, 2018, but did not set a date for a jury trial.

[13] On May 4, 2018, an attorney filed an appearance on behalf of Bell and a motion for discovery. On June 11, 2018, Bell, by counsel, filed a motion to

continue the final pretrial conference, asserting that the State had failed to provide requested discovery. The State indicated that it had complied with his discovery requests on June 7, 2017. The trial court granted the motion that same day and rescheduled the final pretrial conference for July 30, 2018. The Chronological Case Summary contains the following additional entry for June 11, 2018: "Court has Dep. Pros. Atty. Gaumer verify status of time line regarding Criminal rule [sic] 4 in this cause. State informs the Court that time begins at the Defendant's initial hearing on March 13, 2018." *Id.* at 5.

[14] On July 30, 2018, the parties appeared for the previously scheduled final pretrial conference. Bell, by counsel, requested a jury trial setting and further asked the trial court to schedule a deadline for a plea agreement. In addition, Bell told the trial court that he believed "there is a Criminal Rule 4 issue." *Id.* After further discussion, Bell asked the trial court to schedule a status hearing to allow the court and the parties to resolve the Criminal Rule 4 issue. In response, the trial court scheduled a status hearing for August 9, 2018, ordering Bell to file "any motion regarding Criminal Rule 4" within seven days of July 30, 2018. *Id.* The trial court further stated, "[a]ny delay from this date forward is charged to the Defendant for Criminal Rule 4 purposes." *Id.* The trial court did not schedule a jury trial date at that time.

[15] On August 8, 2018, Bell filed a motion for discharge pursuant to Criminal Rule 4(C), with a supporting memorandum of law. On August 9, 2018, the trial court held a status conference as scheduled. During the status conference hearing, the trial court scheduled a jury trial for August 24, 2018, but Bell

indicated that date was unacceptable because his counsel had a scheduling conflict. At Bell's request, the trial court rescheduled the jury trial for August 31, 2018. In addition, the trial court scheduled an evidentiary hearing for Bell's motion for discharge, to be held on August 29, 2018. The trial court stated, "[t]he delay is charged to the Defendant." *Id.* at 6.

[16] On August 21, 2018, the trial court rescheduled the evidentiary hearing on Bell's motion for discharge for August 23, 2018. On August 24, 2018, the trial court issued an order denying Bell's motion for discharge and vacating the August 31, 2018 trial date. In that same order, the trial court scheduled the jury trial for November 7, 2018.

[17] The trial court presided over the jury trial as scheduled on November 7, 2018. During the trial, Deputy Foerg testified, without any objection from Bell, that at the time of the traffic stop he, from an unnamed source, "had previously received information that [Bell] was manufacturing methamphetamine and using methamphetamine with Kassie Gould." Tr. Vol. 2, p. 189. In addition, during cross-examination by Bell, the deputy further stated he was aware that, in a separate case, Gould had pleaded guilty to possession of methamphetamine in connection with the June 19, 2017 traffic stop and arrest. Moreover, after a conference with counsel and the approval of both parties, the trial court instructed the jury that the trial court had taken judicial notice that Gould had pleaded guilty to possession of methamphetamine in connection with the June 19, 2017 traffic stop and arrest.

[18] The jury found Bell was guilty of possession of methamphetamine and possession of paraphernalia, but not guilty of maintaining a common nuisance. On January 8, 2019, the trial court imposed a sentence. This appeal followed.

# Discussion and Decision

## I. Criminal Rule 4

[19] Bell argues he was entitled to have the case dismissed because the State failed to bring him to trial within one year of being charged. The State responds that the trial court did not err in denying Bell's motion for discharge because any delay was due mostly to Bell's incarceration in another county and his failure to timely inform the trial court and the prosecutor of his whereabouts.

[20] An accused's right to a speedy trial is guaranteed by article I, section 12 of the Indiana Constitution and by the Sixth Amendment to the United States Constitution. *State v. Lindauer*, 105 N.E.3d 211, 214 (Ind. Ct. App. 2018), *trans. denied*. Indiana Criminal Rule 4 was adopted to implement the right to a speedy trial. *Id.* The parties agree that Bell's motion for discharge is governed by Indiana Criminal Rule 4(C), which provides in relevant part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; . . . . Any defendant so held shall, on motion, be discharged.

[21] The State thus bears the burden of bringing the defendant to trial within Rule 4(C)'s prescribed one-year deadline. *State v. Larkin*, 100 N.E.3d 700, 703 (Ind. 2018). But the defendant's actions during the relevant time period, including requesting continuances or otherwise causing delays, will extend the deadline: "When a continuance is had on motion of the defendant, or delay in trial is caused by his act, any time limitation contained in [Rule 4] shall be extended by the amount of the resulting period of such delay caused thereby." Ind. Criminal Rule 4(F). The objective of Rule 4 is to move cases along and to provide the defendant with a timely trial, not to create a mechanism to avoid trial. *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000).

[22] The State filed charges against Bell on June 20, 2017, but Bell was not brought to trial until November 7, 2018, 504 days later, well after the one-year prescribed deadline of June 20, 2018. Bell was entitled to discharge unless the delay was attributable to him. This issue presents a question of law applied to undisputed facts, and our standard of review is de novo. *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013).

[23] The parties' dispute focuses on the time period from July 13, 2017, when Bell failed to appear for his initial hearing, to February 5, 2018, when, on record, Bell notified the trial court in writing that he was incarcerated in another county. If that period of time, 207 days, is chargeable to Bell, then the trial deadline was extended by 207 days from June 20, 2018 to January 13, 2019, and the November 7, 2018 jury trial was held within the prescribed one-year deadline, in compliance with Rule 4(C).

[24]     In *Werner v. State*, 818 N.E.2d 26, 27 (Ind. Ct. App. 2004), *trans. denied*, the State charged Werner with possession of marijuana. Werner appeared at several pretrial conferences, but on November 9, 2000, an unidentified individual called the offices of the county clerk to advise that Werner was incarcerated in another county. Werner failed to appear at a pretrial conference, and his bail bonding agent called the trial court's bailiff to advise that Werner would be incarcerated in the other county for an indeterminate period of time. Subsequently, Werner was not released until May 23, 2001.

[25]     The trial court resumed pretrial proceedings after Werner's release, but Werner eventually objected to a rescheduled trial date and moved to dismiss under Rule 4(C). The trial court denied the motion, and Werner sought interlocutory review. On appeal, the key question was whether Werner's objection was timely. In the course of answering the question, a panel of this Court had to determine which party was responsible for the delay that occurred between when Werner failed to appear for a pretrial conference and when he was released from incarceration in the other county. Werner argued that the time was not chargeable to him because he had arranged for two individuals to contact the trial court to provide notification of his incarceration in another county. The *Werner* court determined the calls were insufficient to provide proper notice to the trial court and to the prosecutor, concluding that a written notice on the record was required. As a result, the *Werner* court determined the period of time during which Werner was incarcerated in another county was chargeable to Werner.

In the current case, the record reflects that the State informed the trial court of information, from an unknown source, that Bell was incarcerated in Porter County. But the record is silent as to the basis and credibility of the State's information and whether it was reliable. The trial court did not receive proper confirmation of Bell's incarceration until he personally provided written notice, upon which the State and the trial court could rely. Following the holding in *Werner*, we must conclude that the 207 days that elapsed between July 13, 2017 and February 5, 2018, until Bell provided personal written notice to the trial court is chargeable to him. The delay extended the prescribed deadline under Rule 4(C) well past the jury trial date of November 7, 2018. The State fulfilled its duty under Rule 4(C), and the trial court did not err in denying Bell's motion for discharge.[4]

## II. Sufficiency of the Evidence

Bell claims the State failed to present sufficient evidence that he knowingly or intentionally possessed methamphetamine or paraphernalia. The State responds that there is ample evidence that Bell constructively possessed the straw that contained methamphetamine in this case.

---

[4] Bell raises additional arguments about delays that occurred after February 5, 2018, but it is unnecessary to address those arguments because they did not affect the 207-day extension caused by Bell's failure to provide written notification of his incarceration in another county.

[28]    Our standard of review for challenges to the sufficiency of evidence is well-settled:

> When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision.

*Parks v. State*, 113 N.E.3d 269, 272-73 (Ind. Ct. App. 2018) (citations omitted).

[29]    To obtain a conviction for possession of methamphetamine as a Level 6 felony, the State was required to prove beyond a reasonable doubt that: (1) Bell (2) knowingly or intentionally (3) possessed methamphetamine (pure or adulterated) (4) without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice. Ind. Code § 35-48-4-6.1(a). To obtain a conviction for possessing paraphernalia as a Class C misdemeanor, the State was required to prove beyond a reasonable doubt that: (1) Bell (2) knowingly or intentionally (3) possessed an instrument, device, or another object that he intended to use (4) for introducing a controlled substance into his body. Ind. Code § 35-48-4-8.3.

[30]     A conviction for possession of contraband may be founded upon actual or constructive possession. *Holmes v. State*, 785 N.E.2d 658, 660 (Ind. Ct. App. 2003). The State does not argue that Bell actually possessed the methamphetamine and straw, so we turn to constructive possession. Constructive possession is the actual knowledge of the presence and illegal character of contraband and the intent and capability to maintain dominion and control over it. *Macklin v. State*, 701 N.E.2d 1247, 1251 (Ind. Ct. App. 1998).

[31]     If a person does not have exclusive control of the premises where contraband was found, then intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband. *Allen v. State*, 787 N.E.2d 473, 483 (Ind. Ct. App. 2003), *trans. denied*. The additional circumstances may include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. *Id.*

[32]     In this case, Bell was authorized to drive McCrory's car, but he did not have exclusive control of the car's premises because Gould was inside with him. We must examine the circumstances to determine whether Bell knew of the presence of the contraband and possessed the intent and capability to control it. The shortened straw containing methamphetamine was clearly visible on the passenger seat, near where Bell had been sitting, next to a pen tube. The State presented testimony as to how Gould was dressed, indicating she had few

pockets in which to hide the straw on her person. Also, there was evidence that a package of straws was found on the floor of the car in front of the passenger seat. The straw that was found on the seat, which contained white, powdery residue, was not concealed in a container. In addition, Deputy Foerg testified to the jury, without objection from Bell, that he "had previously received information that [Bell] was manufacturing methamphetamine and using methamphetamine with Kassie Gould." Tr. Vol. 2, p. 189. Further, upon an agreement by both parties, the trial court was allowed to inform the jury that Gould had been convicted of possession of methamphetamine in connection with the June 19, 2017 traffic stop and arrest.

[33] This is sufficient evidence from which a jury could find beyond a reasonable doubt that Bell knew about the presence of the contraband and possessed the requisite intent and capability to control it. *See Macklin*, 710 N.E.2d at 1251 (evidence sufficient to support constructive possession of cocaine; defendant was driver of car, and cocaine was found on driver's seat, in the open; driver also provided false identification); *cf. Grim v. State*, 797 N.E.2d 825, 832 (Ind. Ct. App. 2003) (insufficient evidence to support constructive possession of a narcotic drug; drug was hidden in a case under the passenger seat, and there was no evidence the defendant (the driver) knew it was there).

# Conclusion

[34] For the reasons stated above, we affirm the judgment of the trial court.

[35] Affirmed.

Mathias, J., and Brown, J., concur.