**Ira L. MUEX, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A04–0302–CR–66.

Court of Appeals of Indiana.

Dec. 18, 2003.

Kevin R. O'Reilly, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Ira L. Muex was charged with Count I, criminal deviate conduct, a Class A felony;[1] Count II, criminal deviate conduct, a Class A felony; Count III, criminal confinement, a Class B felony;[2] and Count IV, robbery, a Class B felony.[3] A jury found Muex guilty of all counts. Conviction was entered on Counts I, II, and IV. The trial court sentenced Muex to fifty years on Count I, twenty years on Count II and eight years on Count IV, for a total of seventy-eight years.

Muex raises the following issues:

1. Whether the trial court erred when it denied his pre-trial Motions to Dismiss, to Suppress and for Change of Venue from County premised on prosecutorial misconduct;

2. Whether the State established a sufficient chain of custody for the admission of DNA test results; and

3. Whether Muex's sentence was inappropriate.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On the evening of September 8, 1997, S.O. returned to her apartment. The building had two entry doors that led to the stairway to the apartment. When S.O. was between the first door and the second, she saw Muex running toward her. Muex grabbed S.O. and forced her into the doorway. She noticed a small chrome gun in his hand, and thinking Muex was robbing her, gave him all her money. After putting the money in his pocket, Muex removed S.O.'s shorts and underwear, and penetrated her rectum with his penis. He withdrew, removed some items from the doorway that he apparently thought were making noise, and penetrated her again. He then removed his penis and forced S.O. to perform oral sex on him before pen-

1. Ind.Code § 35–42–4–2.

2. Ind.Code § 35–42–3–3.

3. Ind.Code § 35–42–5–1.

etrating her rectum for a third time. Muex left after warning S.O. not to move.

S.O. went upstairs to her apartment, where her boyfriend notified the Lafayette police. Police found seminal or other fluid on S.O.'s shorts and underwear, on a cushion where she sat after the attack, and in the doorway. They found a rubber glove with petroleum jelly on it in the entryway. A rape kit performed at the hospital included swabs of S.O.'s vaginal, rectal and mouth areas.

DNA samples from Muex[4] and another suspect were sent to the FBI Laboratory for analysis. The items were sent via Federal Express in an enclosed container. After analysis, the FBI manager, Richard Guerrieri, resealed the evidence containers and wrote his initials on them. He placed everything in a sealed container and entrusted the evidence to Federal Express. The items did not arrive overnight as scheduled. Guerrieri was in Lafayette when the sealed container arrived two days later. He opened the container and determined all the seals were intact and there was no evidence of tampering.

A probable cause affidavit was filed on November 15, 2000, after the DNA test results implicated Muex. In that affidavit, the investigating officer related the events of September 8, 1997, as well as the steps taken to obtain the DNA analysis and the results of that analysis. Prior to trial, newspapers published stories related to Muex's arrest, the charges brought against him, and the information in the probable cause affidavit. In those articles the prosecutor discussed the information in the probable cause affidavit.

On July 30, 2002, Muex filed motions to dismiss, to suppress the DNA evidence, and for change of venue from county. All were denied, and a jury found Muex guilty of all charges.

## DISCUSSION AND DECISION

### 1. *Prosecutorial Misconduct*

Muex claims his motions should have been granted because the prosecutor's public disclosure of the results of the DNA testing violated Rules 3.6 and 3.8 of the Indiana Rules of Professional Conduct.

When we review a claim of prosecutorial misconduct, we determine 1) whether the prosecutor engaged in misconduct, and if so, 2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. *Coleman v. State,* 750 N.E.2d 370, 374 (Ind.2001); *Wright v. State,* 690 N.E.2d 1098, 1110 (Ind.1997), *reh'g denied.* The "gravity of peril" is measured by the "probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct." *Coleman,* 750 N.E.2d at 374 (quoting *Kent v. State,* 675 N.E.2d 332, 335 (Ind.1996)).

Prof. Cond. R. 3.6(a) prohibits an attorney from making "an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding." Prof. Cond. R. 3.6(b)(3) provides:

A statement referred to in paragraph (a) will be rebuttably presumed to have a substantial likelihood of materially prejudicing an adjudicative proceeding when it refers to that proceeding and the statement is related to ... the performance or results of any examination or test or the refusal or failure of a person

4. Muex's samples were included because he had been involved in an unrelated crime.

to submit to an examination or test, or the identity or nature of physical evidence expected to be presented[.]

The State contends the prosecutor's reference to the DNA results was permissible, as the results were included in the Affidavit of Probable Cause. A lawyer involved in the investigation or litigation of a matter may state information contained in the public record. Prof. Cond. R. 3.6(c). The trial court agreed that the Affidavit of Probable Cause was a public record.

■ Muex does not address whether the Affidavit was a public record or whether the DNA evidence was properly included in the Affidavit; instead, he argues only that disclosure of the DNA test results gives rise to a presumption misconduct occurred. Because Muex does not provide cogent argument as to why the Affidavit of Probable Cause was not a public document [5] or why the DNA test results should not have been included in the Affidavit, we cannot say the trial court erred in denying Muex's motions.

■ Muex also contends the prosecutor violated Prof. Cond. R. 3.8(e). That rule provides a prosecutor must "exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6." Because the DNA test results were included in the Affidavit for Probable Cause, we agree with the trial court that any references thereto were made to something that was a public record, and thus were not "extrajudicial."

Nor can we say the prosecutor's conduct placed Muex in grave peril. The voir dire is not included in the trial transcript; as a result, we have no way of determining the effect of the pre-trial publicity.

2. *Chain of Custody of DNA Evidence*

In 1997, known samples taken from Muex were sent to the FBI laboratory and a DNA membrane was created. That DNA membrane was returned to the Lafayette Police Department in July or August of 1998. The DNA membrane arrived in Lafayette two days later than expected. The following month, the DNA membrane was resubmitted to the FBI laboratory where additional testing was performed. Muex claims that because neither the Lafayette Police Department nor the FBI could account for the whereabouts of Muex's DNA membrane for two days, there was a break in the chain of custody.

■ In substantiating a chain of custody, the State must provide reasonable assurances that the property passed through various hands in an undisturbed condition. *Culver v. State,* 727 N.E.2d 1062, 1067 (Ind.2000), *reh'g denied.* The State does not have to establish a perfect chain of custody; any gaps go to the weight of the evidence and not to admissibility. *Id.*

■ Here, Muex raises only the two day period during which the DNA membrane was en route from the FBI laboratory to the Lafayette Police Department. Guerrieri received the samples at the FBI laboratory, performed his analysis, resealed the samples, put his initials on them and

---

5. We need not decide in order to resolve this case whether every probable cause affidavit is a "public record." We note, however, our supreme court's statement that "[w]hen the prosecutor files an affidavit or obtains an indictment it becomes a public record, unless

in the case of an indictment, the person has not yet been taken into custody or given bail." *State ex rel. Atkins v. Juvenile Court of Marion County,* 252 Ind. 237, 242, 247 N.E.2d 53, 56 (Ind.1969) (addressing Burns' Ind. Stat. Ann. §§ 9–904, 9–906).

placed them in a sealed package. Guerrieri was in Lafayette when the samples arrived. They were still ·in the sealed container with the evidence labels intact and without evidence of tampering. In *Gilliam v. State,* 270 Ind. 71, 383 N.E.2d 297, 302 (1978), our supreme court held that "the possibility of tampering was precluded by the sealing of the envelope and that of loss or substitution precluded by recording of the registered mail." Here, the presence of the sealed container in an unaltered condition gives us a reasonable assurance the DNA results passed through the chain of custody in an undisturbed manner. The trial court did not err in admitting the DNA evidence.

### 3. *Sentencing*[6]

Muex argues his sentence was manifestly unreasonable[7] because "[t]he attack in this case lasted only a few minutes. Muex did not strike the victim. This crime was not the 'worst offense.' " (Br. of Appellant at 9.)

When considering the appropriateness of the sentence for the crime committed, the sentencing court should focus initially on the presumptive sentence. *Kien v. State,* 782 N.E.2d 398, 416 (Ind.Ct.App. 2003), *reh'g denied, trans. denied* 792 N.E.2d 47 (Ind.2003). It may then consider deviation from the presumptive sentence based on a balancing of the factors that must be considered pursuant to Ind. Code § 35–38–1–7.1(a)[8] together with any discretionary aggravating and mitigating factors found to exist. *Id.*

The trial court found as aggravating factors: ·

> [D]efendant has a history of delinquent and criminal activity, including a history and pattern of violence, that the defendant is presently incarcerated in the Department of Correction for a crime of violence, there is a risk that he

---

**6.** Muex did not include a copy of the sentencing transcript or order in his brief, in violation of Ind.App. R. 46(A)(10).

**7.** On July 19, 2002, our supreme court amended Ind. Appellate Rule 7(B), which governs our review of sentences. When Muex was sentenced, the rule stated in pertinent part: "The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." The amended rule, which took effect January 1, 2003, provides we may revise a sentence that is "inappropriate in light of the nature of the offense and the character of the offender."

App. R. 7(B) is directed to us as the reviewing court and applies to the review that is made as of the date our opinion is handed down. *Kien v. State,* 782 N.E.2d 398, 405 (Ind.Ct.App.2003), *reh'g denied, trans. denied* 792 N.E.2d 47 (Ind.2003). Accordingly, we review Muex's sentence to determine whether the sentence was inappropriate in light of his character and the nature of his offense.

**8.** That section provides:

(a) In determining what sentence to impose for a crime, the court shall consider:
   (1) the risk that the person will commit another crime;
   (2) the nature and circumstances of the crime committed;
   (3) the person's:
      (A) prior criminal record;
      (B) character; and
      (C) condition;
   (4) whether the victim of the crime was less than twelve (12) years of age or at least sixty-five (65) years of age;
   (5) whether the person committed the offense in the presence or within hearing of a person who is less than eighteen (18) years of age who was not the victim of the offense;
   (6) whether the person violated a protective order issued against the person under IC 31–15, IC 31–16, or IC 34–26–5 (or IC 31–1–11.5, IC 34–26–2, or IC 34–4–5.1 before their repeal); and
   (7) any oral or written statement made by a victim of the crime.

will commit other crimes, has a history of sexual predication, that the crimes in the instant case were premeditated, and there was more than one act of violence during the attack.

(App. at 62–63). The trial court found as mitigating factors that "defendant is attending church and is helping other inmates at the Department of Correction." (*Id.* at 62.) The trial court found the aggravating factors outweighed the mitigating factors and sentenced Muex to seventy-eight years to be served consecutively to a ninety-three year sentence he was already serving.

■ The record indicates Muex had an extensive criminal history showing a pattern of violence, including assault, armed robbery, and several battery convictions. He was written up while he was in the Tippecanoe County Jail for fighting and insubordination. He had a history of sexual predatory conduct including impregnation of a fourteen year old when he was twenty-two years old. Muex's sentence is not inappropriate in light of his character.

Nor is his sentence inappropriate in light of the nature of the offense. Muex presumably could have injured S.O. more severely than he did. However, we find that forcing S.O. to submit to three independent acts of anal intercourse, in addition to oral sex, while Muex was armed with a gun, was so heinous as to support an aggravated sentence.

Affirmed.

BARNES, J., and DARDEN, J., concur.