Harold DONNEGAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A04–0305–CR–231.

Court of Appeals of Indiana.

June 14, 2004.

Transfer Denied Aug. 26, 2004.

---

Steven Knecht, Vonderheide & Knecht, P.C. Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Harold Donnegan appeals his convictions for dealing in cocaine, possession of cocaine, and possession of marijuana. Although we find one instance of misconduct by the prosecutor, none of the instances alleged by Donnegan placed him in a position of grave peril. However, because Donnegan simultaneously possessed the cocaine that supported the possession and dealing in cocaine convictions, we find that Indiana double jeopardy principles are violated; consequently, we reverse the possession of cocaine convictions. Additionally, we find that the evidence is sufficient to show that Donnegan constructively possessed the cocaine and marijuana because he lived in the residence where the drugs were found and the drugs were his. Because Donnegan had a sophisticated operation that was responsible for bringing large amounts of cocaine from Chicago to Tippecanoe County to sell and had prior convictions, we find that his forty-year sentence for dealing in cocaine is not inappropriate.

### Facts and Procedural History

Pursuant to an ongoing drug investigation, on the morning of March 27, 2001, Tippecanoe County Drug Task Force Officers took four bags of trash from the residence at 910 Eastwich Drive in Lafayette, where Donnegan and Angelia Hill were believed to be living. In the trash, officers found, among other things, mari-

juana seeds and residue, cocaine residue, and plastic baggie remnants.[1]

The next day, March 28, 2001, officers obtained a search warrant for the residence at 910 Eastwich Drive. Around 11:30 a.m. that morning, officers conducted surveillance of the residence and observed Donnegan in the backyard. When Donnegan left the residence in his car just minutes later, officers stopped and arrested him on an unrelated warrant. Officers searched Donnegan and found a crack pipe and 1.63 grams of cocaine in his pocket.

Following Donnegan's arrest, officers searched the residence at 910 Eastwich Drive. During the search, officers found 48.97 grams of cocaine in multiple packages inside a "canister safe"[2] underneath the kitchen sink, 2.97 grams of cocaine in a kitchen drawer, .85 grams of cocaine in a leather jacket, .06 grams of cocaine embedded in the carpet, a digital scale and baggies in a kitchen cabinet, marijuana on a counter in the kitchen, and marijuana seeds in an ashtray in the living room. Hill, who was present at the beginning of the search, was arrested. Hill later pled guilty to dealing in cocaine as a Class A felony and was sentenced to thirty years, twenty of which were ordered to be executed.

The State ultimately charged Donnegan with the following: Count I: Possession of Cocaine as a Class B felony; Count II: Dealing in Cocaine as a Class A felony (possession with intent to deliver three or more grams); Count III: Possession of Cocaine as a Class A felony; Count IV: Conspiracy to Deal in Cocaine as a Class A felony; Count V: Possession of Marijuana as a Class A misdemeanor; and Count VI: Possession of Cocaine as a Class B felony. At the jury trial in this case, Hill testified that the lease for 910 Eastwich Drive was in her name only but that Donnegan lived with her about half of the time and helped pay bills; the other half of the time Donnegan lived in Chicago.[3] Hill also testified that Donnegan—whose drug network included at least three or four other individuals—brought large amounts of cocaine from Chicago, oftentimes via public transportation, to sell in Tippecanoe County and that she sold cocaine for Donnegan. Hill testified generally that cocaine was kept in the residence at 910 Eastwich Drive and that both she and Donnegan had access to it. Hill testified specifically that the cocaine found inside the canister safe had been there for approximately one week.

Following trial, the jury found Donnegan guilty as charged. The trial court entered judgment of conviction for Count I: Possession of Cocaine as a Class B felony;[4] Count II: Dealing in Cocaine as a Class A felony;[5] Count V: Possession of Marijuana as a Class A misdemeanor;[6] and Count VI: Possession of Cocaine as a Class B felony.[7] The trial court did not enter judgment of conviction for Counts III and IV. At the sentencing hearing, the trial court identified seven aggravators:

1. Specifically, officers found plastic baggies with the corners cut off. An officer testified at trial that baggie corners are often used to package drugs for distribution.

2. A "canister safe" is typically an aerosol can with a hidden compartment.

3. At the time officers searched the residence at 910 Eastwich Drive, Hill and Donnegan had only lived there twenty-eight days. Although in prior residences other people lived with them, it appears from the record that only Hill and Donnegan lived at 910 Eastwich Drive. *See* Tr. p. 87.

4. Ind.Code § 35–48–4–6(a), (b)(2)(B)(ii).

5. Ind.Code § 35–48–4–1(a)(2)(C).

6. Ind.Code § 35–48–4–11(1).

7. I.C. § 35–48–4–6(a), (b)(2)(B)(ii)

(1) criminal history; (2) Donnegan is likely to reoffend; (3) Donnegan committed another crime after he was found guilty in this case; (4) the amount of cocaine involved; (5) Donnegan's treatment of women; (6) Donnegan committed crimes while on bond; and (7) Donnegan is in need of rehabilitative treatment that can best be provided by commitment to a penal facility. The trial court also found two mitigators: (1) Donnegan's family support; and (2) his offer of employment. Concluding that the aggravators outweighed the mitigators, the trial court sentenced Donnegan as follows: Count I, fourteen years; Count II, forty years; Count V, one year; and Count VI, fourteen years. The trial court ordered Count I to run concurrent with VI but consecutive to the remaining counts, for an aggregate sentence of fifty-five years. Donnegan now appeals.

## Discussion and Decision

Donnegan raises several issues on appeal, which we reorder and restate as follows. First, Donnegan contends that the trial court erred by denying his motions for mistrial based on two instances of prosecutorial misconduct. Second, he contends that his convictions for dealing in cocaine and possession of cocaine violate Indiana double jeopardy principles. Third, Donnegan contends that the evidence is insufficient to support his convictions. Last, he contends that his sentence is inappropriate. We address each issue in turn.

### I. Prosecutorial Misconduct

■■■■ Donnegan contends that the trial court erred by denying his motions for mistrial based on two instances of prosecutorial misconduct. When we review a claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct; and (2) whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Muex v. State*, 800 N.E.2d 249, 251 (Ind.Ct.App.2003). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the misconduct. *Id.* Furthermore, a mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Kirby v. State*, 774 N.E.2d 523, 533 (Ind.Ct.App.2002), *trans. denied.* The determination of whether to grant a mistrial is within the trial court's discretion, and we will reverse only for an abuse of that discretion. *Id.* We accord great deference to the trial court's decision, as it is in the best position to gauge the circumstances and the probable impact on the jury. *Id.* at 534.

■■■■ Donnegan argues first that the prosecutor committed prosecutorial misconduct during closing argument by broaching the subject of whether one of the State's witnesses, Tammy Tarleton, had taken a polygraph examination when that subject was not addressed with Tarleton during trial. The facts surrounding this issue are as follows. Several of the State's witnesses had entered into plea agreements with the State, which required them to submit to a polygraph examination. At trial, the defense wanted to explore whether these witnesses complied with the terms of their plea agreements. The trial court permitted the defense to ask these witnesses whether they complied with the terms of their plea agreements, including whether they submitted to a polygraph examination. However, the trial court refused to admit any evidence concerning the results of the polygraph examinations.

During trial, the defense asked at least two of the State's witnesses whether they had taken a polygraph examination. However, for Tarleton, the defense only asked her about the existence of a plea agree-

ment; the defense did not inquire whether she had taken a polygraph examination. Nor did the prosecutor ask Tarleton about the plea agreement or whether she had taken a polygraph examination. Nevertheless, during closing argument, the prosecutor introduced the subject of whether Tarleton had submitted to a polygraph examination. Specifically, the prosecutor stated:

> Tammy Tarleton gave ... her first statement before she had any deal with the [S]tate whatsoever, right after she'd been arrested, before she had to give a cleanup and a polygraph and all that great stuff and she didn't give a polygraph [8] but it doesn't matter, the statement she gave was spontaneous....

Tr. p. 386. The defense objected and requested a mistrial. The trial court denied the motion for mistrial but admonished the jury that the results of polygraph examinations are not admissible.

■ We agree with Donnegan that the prosecutor's statement that Tarleton did not take a polygraph examination constitutes misconduct. We find this to be misconduct because there was no evidence in the record regarding whether Tarleton had submitted to a polygraph examination. During closing arguments, counsel cannot argue evidence that was not admitted into evidence. *See Trice v. State*, 519 N.E.2d 535, 538 (Ind.1988) ("It is improper for counsel in argument to comment on matters not in evidence.").

■ However, we do not find that this misconduct placed Donnegan in a position of grave peril to which he should not have been subjected. First, this is not a case

where there was no mention of polygraph examinations up to the point of the defense's objection. Indeed, the defense— with the permission of the trial court—had asked at least two of the State's witnesses whether they had taken a polygraph examination. Therefore, the issue of polygraph examinations was weaved throughout the trial. Second, after the defense's objection and the trial court's admonishment that polygraph results are not admissible,[9] the prosecutor rephrased his argument, "What you didn't hear was whether or not Tammy Tarleton took a polygraph examination. They made a specific point to bring that out on the other two but not on [her]". Tr. p. 396. The prosecutor thus clarified that there was no evidence in the record concerning whether Tarleton had taken a polygraph examination.

■ Donnegan next argues that the prosecutor committed prosecutorial misconduct during closing argument by stating that Donnegan's entire defense was "smoke and mirrors." Specifically, the prosecutor stated that Donnegan's entire defense was "smoke and mirrors designed to get you to take your eye off the ball and miss what's important and focus on something stupid that doesn't matter, has no relevance." Tr. p. 396. Donnegan objected and requested a mistrial. The trial court denied the motion for mistrial but admonished the jury to disregard the prosecutor's remark.

In support of his argument that this remark constitutes prosecutorial misconduct, Donnegan relies exclusively on *Johnson v. State*, 453 N.E.2d 365 (Ind.Ct.App.

---

**8.** It appears that either the prosecutor said, or meant to say, that Tarleton did take a polygraph examination. *See* Tr. p. 387. However, for purposes of our analysis, it does not matter because there was no evidence either way.

**9.** We observe that the trial court's admonishment did not address the misconduct. A more appropriate admonishment would have been that the argument of counsel is not evidence.

1983). In *Johnson*, the prosecutor stated during closing argument that "a defense attorney's job is to 'get his client off' by bringing out 'insignificant facts' and 'legal technicalities.'" *Id.* at 368. On appeal, this Court observed that although such remarks do not always mandate a mistrial, they are irrelevant to the issues to be decided by the jury and should not be allowed. *Id.* Based on this and numerous other remarks, this Court found that the prosecutor committed misconduct and that the defendant was placed in a position of grave peril. *Id.* at 368–69. Accordingly, we held that the trial court abused its discretion by denying the defendant's motion for mistrial and reversed the affected conviction. *Id.* at 369.

■ The prosecutor's "smoke and mirrors" remark here is not at all similar to the prosecutor's remark in *Johnson*. Instead, the prosecutor's remark here concerns the quality of Donnegan's defense and is a permissible comment on the evidence. *See Newsome v. State*, 686 N.E.2d 868, 876 (Ind.Ct.App.1997) (holding that a prosecutor may properly comment on the evidence during closing argument). Consequently, we do not find that this remark constitutes misconduct. Even if we did find misconduct, the trial court admonished the jury to disregard the prosecutor's remark. "Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results from an improper comment made by a prosecutor." *Kirby*, 774 N.E.2d at 534. Donnegan does not argue that this admonishment was inadequate. We therefore conclude that the trial court did not abuse its discretion by denying Donnegan's motions for mistrial.

## II.  Double Jeopardy

■ Next, Donnegan contends that his convictions for Count I: possession of cocaine, Count II: possession of cocaine with intent to deliver, and Count VI: possession of cocaine violate Indiana double jeopardy principles because he simultaneously possessed the cocaine that supports each of these convictions even though the cocaine was found at different times and places. Under Article I, Section 14 of the Indiana Constitution, a person may not be put in jeopardy twice for the same offense. Two or more offenses constitute the same offense in violation of Article I, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind.2002).

In *Campbell v. State*, 734 N.E.2d 248 (Ind.Ct.App.2000), we addressed the issue of simultaneous possession of drugs. There, a confidential informant bought cocaine from the defendant at the defendant's residence. Shortly after the confidential informant left the residence, the defendant exited his residence. The police then arrested the defendant in front of his residence and found cocaine on his person. The police then obtained a search warrant and searched the defendant's residence, finding cocaine in there as well. The defendant was charged with and convicted of two counts of possession of cocaine—one for having cocaine on his person and the other for having cocaine inside his residence. On appeal, the defendant argued that this constituted double jeopardy. This Court concluded that under both the actual evidence test and the decisions of this Court pre-dating and unaffected by *Richardson*, the defendant could be convicted of only one count of possession of cocaine because the possessions charged and proven were simultaneous. *Id.* at 250. In reaching this conclusion, this Court re-

lied on *Young v. State,* 564 N.E.2d 968 (Ind.Ct.App.1991), *trans. denied.* This Court was particularly persuaded by Judge Shields' separate concurring opinion on rehearing:

> Young's double jeopardy protection is breached by multiple convictions based upon the location Young had the cocaine which he simultaneously possessed, be it in part in his left trousers' pocket and in part in his right trousers' pocket, or in part in his right trousers' pocket and in part underneath the car seat on which he sat, or, as here, in part on his person and in part in a spray can in his car from which he was removed immediately following the vehicle's stop. The essence of the offense of possession is the possession. Thus, just as the simultaneous possession of a stolen watch and a stolen wallet constitutes but one offense of theft, so too, the possession of the cocaine on a particular occasion is but one offense; the effect of the accumulated quantity possessed is to aggravate the possession rather than to break it into multiple possessions.

*Id.* at 973 (Shields, J., concurring). We now address whether Donnegan simultaneously possessed the various quantities of cocaine.

### A. Counts I and II

◼ Count I alleged that on March 28, 2001, Donnegan possessed cocaine in his vehicle,[10] and Count II alleged that on March 28, 2001, Donnegan possessed cocaine—which was found inside the residence at 910 Eastwich Drive—with intent to deliver. The record shows that around 11:30 a.m. on March 28, officers conducted surveillance of the residence and observed Donnegan in the backyard. Minutes later, Donnegan left the residence in his car. Officers followed Donnegan, and they eventually stopped and arrested him on an unrelated warrant, finding cocaine on his person. During a search of the residence shortly after Donnegan's arrest, officers found nearly fifty grams of cocaine inside a canister safe underneath the kitchen sink. Despite the fact that cocaine was found at different times and places, we conclude that Donnegan simultaneously possessed the cocaine on his person and the cocaine inside the canister safe in the residence. *See Campbell,* 734 N.E.2d at 251. This possession constitutes one offense. *See id.* To hold otherwise would create an absurd result. That is, if the officers arrested a defendant inside his residence, finding cocaine in the residence and on his person, the defendant could be convicted of only one count related to the possession of the cocaine. But if officers waited until the defendant stepped outside his residence, then the defendant could be convicted of two counts. Consequently, we reverse Donnegan's conviction for Count I: possession of cocaine.

### B. Counts II and VI

◼ Count VI alleged that on March 27, 2001, Donnegan possessed cocaine, which was found in the trash at 910 Eastwich Drive, and Count II alleged that on March 28, 2001, Donnegan possessed cocaine—which was found inside the residence at 910 Eastwich Drive—with intent to deliver. The record shows that on the morning of March 27, officers removed bags of trash from the residence at 910 Eastwich Drive, finding, among other things, cocaine residue and plastic baggy remnants. Approximately twenty-four hours later, officers searched the resi-

---

**10.** Although the charging information alleges that the cocaine was found in Donnegan's vehicle, officers recovered the cocaine from Donnegan's person once he stepped outside his vehicle.

dence, finding individually-packaged cocaine inside a canister safe. Hill testified at trial that the cocaine had been in the canister safe for "approximately a week." Tr. p. 90. Based on Hill's testimony that the cocaine had been in the canister safe for approximately one week, Donnegan simultaneously possessed the cocaine residue found in the trash on March 27 and the cocaine found inside the canister safe on March 28. This possession constitutes one offense. *See Campbell*, 734 N.E.2d at 251. Moreover, it can be reasonably inferred that the plastic baggy remnants found in the trash were the same baggies that were used to package the cocaine found in the canister safe, which bolsters our conclusion that Donnegan simultaneously possessed the cocaine. Consequently, we reverse Donnegan's conviction for Count VI: possession of cocaine.

### III. Sufficiency of the Evidence

Next, Donnegan contends that the evidence is insufficient to support his convictions for possession of cocaine with intent to deliver and possession of marijuana.[11] Specifically, he argues that the evidence does not show that he constructively possessed the cocaine and marijuana that officers found when they searched the residence at 910 Eastwich Drive after his arrest. Donnegan does not challenge the sufficiency of the evidence for intent to deliver the cocaine. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Allen v. State*, 787 N.E.2d 473, 482 (Ind.Ct.App.2003), *trans. denied.* We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be

affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

In the absence of actual possession of drugs, constructive possession may support a conviction for a drug offense. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind.1999). In order to prove constructive possession, the State must demonstrate that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband. *Id.* To prove the intent element, the State must show the defendant's knowledge of the presence of the contraband. *Id.* "This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Id.* (quotation omitted). These additional circumstances include: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant. *Allen*, 787 N.E.2d at 483.

The capability requirement is met when the State demonstrates that the defendant is able to reduce the controlled substance to his personal possession. *Goliday*, 708 N.E.2d at 6. Further, proof of a possessory interest in the premises in which the controlled substance is found is adequate to show the capability to main-

11. Donnegan also contends that the evidence is insufficient to support his possession of cocaine convictions, but in light of our conclusion above that such convictions violate double jeopardy, we only address the sufficiency of the evidence for the dealing in cocaine and possession of marijuana convictions.

tain dominion and control over the items in question. *Id.* A defendant's possessory interest in the premises does not require his actual ownership of the premises. *Allen,* 787 N.E.2d at 482. "[A] house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee." *Id.* (quotation omitted).

■ With respect to the cocaine, Hill testified at trial that although the lease to 910 Eastwich Drive was in her name only, Donnegan lived with her about half of the time and helped pay bills. In fact, on the day of the search, officers conducted surveillance of the residence and observed Donnegan there. This is sufficient to show that Donnegan had the capability to maintain dominion and control over the cocaine. As for intent to maintain dominion and control, Hill testified that she sold cocaine for Donnegan and that he supplied her with the cocaine. Regarding the location of the cocaine, the following exchange occurred during trial:

> [Prosecutor:] When you were selling crack cocaine for Harold Donnegan would you have your own stash somewhere or did you get it directly from him for each sale?
>
> [Hill:] No, it was a—there was a stash in the house.
>
> [Prosecutor:] And you would have access to that stash, is that right?
>
> [Hill:] Yes.
>
> [Prosecutor:] Who would stash the stash?
>
> [Hill:] Both of us.
>
> [Prosecutor:] All right. And is this the sort of thing that when it would run out he'd go get more?
>
> [Hill:] Yeah.

Tr. p. 81–82. Hill then elaborated that they kept the stash of cocaine in the residence at 910 Eastwich Drive in an engine degreaser can, which is where officers found nearly fifty grams of cocaine during the search. Hill's testimony is sufficient to show that Donnegan had the intent to maintain dominion and control over the cocaine. Accordingly, the evidence is sufficient to support Donnegan's conviction for possession of cocaine with intent to deliver.

■ Based on the same reasons above, we conclude that the evidence is also sufficient to show that Donnegan had the capability to maintain dominion and control over the marijuana. As for intent to maintain dominion and control, when officers searched the residence at 910 Eastwich Drive—where Donnegan had just been earlier that day—they found marijuana on a counter in the kitchen, the same room where Donnegan and Hill kept their stash of cocaine. *See* Tr. p. 192, 265. Officers also found marijuana seeds in an ashtray in the living room. Additionally, officers found evidence of marijuana in their trash the previous day, and Hill testified at trial that Donnegan had purchased marijuana on at least one prior occasion. The evidence is sufficient to show that Donnegan had the intent to maintain dominion and control over the marijuana. Accordingly, the evidence is sufficient to support Donnegan's conviction for possession of marijuana.

## IV. Inappropriate Sentence

Last, Donnegan challenges the appropriateness of his sentence for dealing in cocaine only. In particular, Donnegan argues that some of the aggravating circumstances considered by the trial court were

improper.[12] As a result, Donnegan asserts that his sentence for dealing in cocaine is inappropriate and should be reduced.

At the outset, we note that sentencing lies within the discretion of the trial court. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind.Ct.App.2003). If a trial court uses aggravating or mitigating circumstances to deviate from the presumptive sentence, it must identify all significant mitigating and aggravating circumstances, state the specific reason why each circumstance is determined to be mitigating or aggravating, and articulate its evaluation and balancing of the circumstances. *Id.* The trial court's assessment of the proper weight of mitigating and aggravating circumstances and the appropriateness of the sentence as a whole is entitled to great deference on appeal and will be set aside only upon a showing of a manifest abuse of discretion. *Id.*

### A. Aggravating Circumstances

Donnegan argues first that the trial court improperly considered his criminal history as an aggravator. Indiana Code § 35–38–1–7.1(b)(2) provides that a history of criminal or delinquent activity can be an aggravator. Here, the record reveals that Donnegan's criminal history consists of a felony conviction for unlawful use of a weapon and a misdemeanor conviction for possession of marijuana, both from Cook County, Illinois.[13] These convictions are sufficient to support the statutory aggravator of history of criminal activity. *See Armstrong v. State*, 742 N.E.2d 972, 980 (Ind.Ct.App.2001) (finding that one felony conviction and one misdemeanor conviction is sufficient to support criminal history aggravator).

Donnegan argues next that the trial court improperly found the amount of cocaine involved—nearly fifty grams—as an aggravator. Donnegan is correct that this is an improper aggravator given the facts of this case. Donnegan was charged and convicted of possessing three or more grams of cocaine with intent to deliver. Because the amount of drugs is a material element of the offense of which Donnegan was convicted, it cannot support an enhanced sentence. *See Smith v. State*, 780 N.E.2d 1214, 1219 (Ind.Ct.App.2003) (holding that the trial court could not use the fact that the defendant had eighty-five grams of cocaine as an aggravator because he was convicted of dealing three or more grams), *trans. denied.*

Donnegan argues last that the trial court improperly considered his treatment of women as an aggravator. Even assuming that this aggravator is improper, Donnegan does not dispute that the remaining four aggravators identified by the trial court—Donnegan is likely to reoffend, Donnegan committed another crime after he was found guilty in this case, Donnegan committed crimes while on bond, and Donnegan is in need of rehabilitative treatment that can best be provided by commitment to a penal facility—are valid aggravators. One aggravator is suf-

---

12. Donnegan does not make any arguments concerning mitigators.

13. Donnegan was also arrested for false reporting, and that trial resulted in a mistrial. Additionally, a possession of marijuana charge was pending against Donnegan at the time of sentencing in this case. Although one or more arrests, standing alone, do not establish the history of criminal or delinquent activity aggravator, such a record does reveal to the court that subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State. *Martin v. State*, 784 N.E.2d 997, 1011 (Ind.Ct.App.2003), *reh'g denied.* To the extent that the trial court relied on these arrests, the court did not err in considering them as an aggravator.

ficient to support an enhanced sentence. *See McCarthy v. State,* 749 N.E.2d 528, 539 (Ind.2001).

### B. Appropriateness of Sentence

■ We now turn our attention to whether Donnegan's sentence for dealing in cocaine as a Class A felony is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B). The sentencing range for a Class A felony is twenty to fifty years, with the presumptive sentence being thirty years. Ind.Code § 35–50–2–4. Here, the trial court sentenced Donnegan to forty years.

Our review of the nature of the offense reveals that Donnegan—whose drug network included at least three or four other individuals—brought large amounts of cocaine from Chicago to Tippecanoe County. Donnegan not only sold the cocaine himself, but he recruited other people to sell cocaine on his behalf as well. Donnegan was a sophisticated dealer, using multiple cellular phones to make deals and public transportation to bring the cocaine to Tippecanoe County. The trial court called Donnegan's operation the "Wal[-]Mart of crack cocaine in Lafayette" where "every-body in the community came to buy crack cocaine[.]" Tr. p. 433.

A review of the character of the offender reveals that Donnegan had two prior convictions, one of which was drug related. Donnegan also committed another crime "[t]he instant the Court imposed judgment in this case" and committed crimes while on bond. Tr. p. 433. Although Donnegan had a supportive family and job, he continued to deal drugs.

After due consideration of the trial court's decision, we cannot say that the forty year sentence for dealing in cocaine is inappropriate in light of the nature of the offense and the character of the offender. Because we find that Donnegan's sentence is not inappropriate, we decline his invitation to reduce his sentence.

Affirmed in part and reversed in part.

SHARPNACK, J., and MATHIAS, J., concur.