## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 16 2020, 10:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Coreion Tae D. Gentry-Shelton, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | July 16, 2020 <br><br> Court of Appeals Case No. 19A-CR-2940 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause Nos. 02D05-1905-F3-29 02D04-1805-F6-576 |

**Rucker, Senior Judge.**

## Case Summary

[1] After a trial by jury Coreion Tae D. Gentry-Shelton was convicted of robbery and criminal confinement and sentenced to a total term of fourteen years.[1] He now appeals raising two issues which we rephrase as: (1) did the trial court abuse its discretion by denying a defense motion for mistrial based on alleged prosecutorial misconduct; and (2) is Gentry-Shelton's sentence inappropriate in light of the nature of the offense and the character of the offender. We affirm.

## Facts and Procedural History

[2] On March 19, 2019, Cheyenne Verschure was alone at the home of her boyfriend, Alejandro Grajales, who was away at work. Sometime in the early afternoon hours she heard a knock at the door. When Verschure opened the door a person whom she did not know but would later identify from a photo array and at trial as Gentry-Shelton asked for "Rondo" and said he had come to "collect his effing money." Tr. Vol. 2 p. 102. Verschure told Gentry-Shelton that no one by that name lived there. Gentry-Shelton pushed open the door, put a gun to Verschure's head, and instructed her to move back into the house.

---

[1] Under a separate cause number Gentry-Shelton was also found to have violated probation. Accordingly, he was sentenced to an executed term to be served consecutive to the sentence imposed in this case. The petition for revocation was based in part on the convictions that are the subject of this appeal. Thereafter Gentry-Shelton filed his Notice of Appeal in both cases together with a Petition to Consolidate Appeals. This Court issued an Order granting the petition. *See* Appellant's App. Vol. 2 p. 224. However, in this appeal Gentry-Shelton has raised no claim related to his probation revocation.

Verschure went into the living room and sat on the couch while Gentry-Shelton held the gun to her head.

[3]     Three other men rushed into the home.  Crying and hysterical Verschure continued to complain that no one by the name Rondo lived there.  Gentry-Shelton repeatedly instructed her to shut up and stop talking or he was going to shoot her.  While Gentry-Shelton held the gun on Verschure the other men ransacked the house.  Among the items taken were Verschure's cell phone, a television set, and some game consoles.  Verschure estimated that the intruders were in the house between 15 and 20 minutes.

[4]     The home was equipped with six video surveillance cameras that were designed to send an alert to Grajales' cellphone whenever motion was detected.  However, during the intrusion Grajales was working construction at a location that did not have cellphone service and thus he was not able to see what transpired in real time.  Nonetheless, even though one of the intruders ripped one of the cameras off the wall, the cameras still recorded the images of all four men.

[5]     Once the men left the house Verschure waited several minutes to ensure they were not coming back.  She then ran to a neighbor's home and dialed 911.  Officers of the Fort Wayne Police Department arrived a few minutes later.  After Grajales arrived home he spoke with police and turned over his video system to investigating officers.

[6] On May 2, 2019 the State charged then nineteen-year-old Gentry-Shelton with Count I Robbery[2] as a Level 3 felony and Count II Criminal Confinement[3] as a Level 3 felony. At trial several of the videos recovered from the home were introduced into evidence without objection. At least one of the videos – State's Exhibit 3 – depicted all four men, one of whom was sitting on a couch pointing a handgun at Verschure's head.

[7] During the course of the investigation Christopher Hawthorne, a Detective with the Fort Wayne Police Department was asked to review Exhibit 3 to see if he could identify any of the intruders. Detective Hawthorne testified that he was able to identify each of the individuals and that he recognized them from "personal experience." Tr. Vol. 2 p. 177. After Detective Hawthorne testified that he "had prior experiences with each individual that was involved," the State asked, "More than once?" *Id.* at 177-78. Detective Hawthorne responded, "Yes, multiple." *Id.* at 178. The State then asked "[h]ow many times do you think you've met him in your life?" *Id.* At that point Gentry-Shelton interjected, and the following exchange occurred:

> [Defense Counsel]: I'm gonna object to this line of questioning. He's established that he's met him a couple of times.
>
> [State]: Considering that –

---

[2] Ind. Code § 35-42-5-1 (2017).

[3] Ind. Code § 35-42-3-3(b)(2)(A) (2014).

[Defense Counsel]: Asked and answered.

[State]: Your Honor . . . If I might respond briefly?

THE COURT: Yes.

[State]: Considering that eyewitness identification is often attacked, and I think in this case there's been attempts at that, the idea that he has had more experience than one meeting with the Defendant is certainly valid information for the jury to determine whether or not this person has the grounds to identify an individual or not.

[Defense Counsel]: Your Honor, he's already testified to that.

THE COURT: Sustained.

*Id.* at 178-79.

[8] When the State began to argue in rebuttal the trial court directed the parties to approach the bench and held a side bar conference. During the course of which Defense Counsel reiterated his objection and declared "I'd like that testimony stricken at worst and mistrial [sic] at best. I think this is coming very close to tainting my client." *Id.* at 180. The trial court again sustained the "asked and answered" objection but denied both the motion to strike and the motion for mistrial. *Id.* at 181. At the close of trial, the jury returned a verdict of guilty on both counts.

[9] A combined sentencing and probation revocation hearing was held November 15, 2019. The trial court entered judgment of conviction on Count I Robbery and Count II Criminal Confinement. Citing aggravating factors including Gentry-Shelton's criminal history the trial court imposed concurrent fourteen-year sentences on both counts. The trial court ordered the sentences to run consecutively to a two-year sentence imposed for the probation violation, all to be served at the Indiana Department of Correction. The trial court also ordered restitution in the amount of $3,100.00. This appeal followed. Additional facts are set forth below.

# Discussion

## I. Motion for Mistrial

[10] Gentry-Shelton contends the trial court erred by denying his motion for mistrial based on alleged prosecutorial misconduct. When faced with a circumstance that a defendant believes might warrant a mistrial, generally the correct procedure is to request an admonishment. *Isom v. State*, 31 N.E.3d 469, 482 (Ind. 2015). If counsel is unsatisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, then counsel may move for mistrial. *Id.* A "failure to request an admonishment *or* move for a mistrial results in waiver of the issue." *Id.* (emphasis in original). In essence "waiver occurs where there was neither a request for admonishment *nor* a motion for mistrial." *Id.* (emphasis in original). Here, whether Gentry-Shelton's motion to strike is tantamount to a request for admonishment is

debatable. In any event, because Gentry-Shelton sought a mistrial appellate review of his claim has not been waived.

[11] A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Donnegan v. State*, 809 N.E.2d 966, 972 (Ind. Ct. App. 2004), *trans. denied*. The grant of a mistrial is a determination within the trial court's discretion, and we will reverse its decision only for an abuse of that discretion. *Id.* We give great deference to the trial court's decision, as it is in the best position to gauge the circumstances and the probable impact on the jury. *Id.*

[12] Further, appellate review of a claim of prosecutorial misconduct is a two-step process. First, we consider whether the prosecutor engaged in misconduct. *Hand v. State*, 863 N.E.2d 386, 393 (Ind. Ct. App. 2007). If so, we then consider whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Id.* at 394. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's verdict rather than the degree of impropriety of the conduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

[13] According to Gentry-Shelton "[t]he questions from the Prosecutor regarding prior contact with the Defendant by the Fort Wayne Police Officer justified Defendant's motion for mistrial." Appellant's Br. p. 16. He continues, "[t]he Prosecutor's remarks amounted to an impermissible effort to create the

perception with the jury that the Appellant had had multiple run ins and/or arrests with the Fort Wayne Police Department." *Id.*

[14] Although not making the express claim, Gentry-Shelton essentially argues that the prosecutor employed an evidentiary harpoon. An evidentiary harpoon occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jurors against the defendant and his defense. *Evans v. State*, 643 N.E.2d 877, 879 (Ind. 1994). In certain circumstances the injection of an evidentiary harpoon may constitute prosecutorial misconduct requiring a mistrial. *Roberts v. State*, 712 N.E.2d 23, 34 (Ind. Ct. App. 1999) (citing *Jewell v. State*, 672 N.E.2d 417, 423 (Ind. Ct. App. 1996), *trans. denied*), *trans denied.*

[15] It is certainly the case that the admission of evidence of prior arrests and/or convictions is extremely prejudicial and will not be allowed unless a strong showing of probative value can be made. *Mote v. State*, 775 N.E.2d 687, 689 (Ind. Ct. App. 2002)(citing Ind. Evidence Rule 404(b)), *trans. denied*; *Henson v. State*, 514 N.E.2d 1064, 1066 (Ind. 1987). Indeed, "[e]vidence of other crimes and bad acts is inherently prejudicial. There is always the fear that a jury will convict the defendant solely because he is a bad actor. That is why we go to such lengths to prevent such evidence coming before the jury." *Perez v. State*, 728 N.E.2d 234, 238 (Ind. Ct. App. 2000) (Kirsch, J., dissenting) (agreeing to the existence of an evidentiary harpoon where police officer witness offered inadmissible evidence regarding prior convictions; but disagreeing any error was harmless), *trans. denied*.

[16] Here, the record shows that the Detective's testimony concerning multiple contacts with Gentry-Shelton did not inform the jury of any specific incident or prior misconduct involving Gentry-Shelton. In fact, objecting to the State's line of questioning Gentry-Shelton declared "I think this is *coming very close* to tainting my client." Tr. Vol. 2 p. 180 (emphasis added). The trial court apparently agreed it came close but did not cross the line. It noted for example that the prosecutor had "gotten [the Detective] to [sic] he knows who these people are, that's not a problem, but I think the issue is getting into more of the prior involvements, that was the concern I've sustained [the Defense] objection on." *Id.* at 181. The trial court acted well within its discretion in so concluding. *See Tompkins v. State*, 669 N.E.2d 394, 399 (Ind. 1996) (recognizing that the trial court could have determined that a witness's statement did not clearly inform the jury that the defendant had a criminal history); *see also Clifton v. State*, 499 N.E.2d 256, 258 (Ind. 1986) (police officer testimony referring to an earlier investigation did "not refer to [defendant] as the subject of a criminal investigation or give any indication of criminal activity on his part").

[17] From the officer's testimony, the jury could only infer that Gentry-Shelton had some sort of contact with law enforcement in the past. This was not impermissible. We thus cannot conclude that the prosecutor engaged in

misconduct and therefore we do not consider whether defendant was placed in a position of grave peril. *See Hand*, 863 N.E.2d at 394.[4]

## II. Appropriateness of Sentence

[18]     Gentry-Shelton seeks to reduce the sentence imposed for his convictions on Count I and Count II pursuant to Indiana Appellate Rule 7(B) which provides that this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[19]     We independently examine the nature of Gentry-Shelton's offense and his character under Rule 7(B) with substantial deference to the trial court's sentence. *See Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013) (emphasis in original), *trans. denied*. And our Supreme Court has declared "whether we regard a sentence as inappropriate at the end of the day

---

[4] In this appeal Gentry-Shelton also complains the prosecutor engaged in further misconduct by remarking in front of the jury that "eyewitness identification is often attacked and [ I ] think in this case there has been attempts at that." Appellant's Br. p. 19 (quoting Tr. Vol. 2 p. 179). According to Gentry-Shelton the Prosecutor "is making an effort to characterize Defense counsel's efforts as 'attack' rather than responsible ethical cross examination which any defendant at jury is entitled to." *Id.* at 19-20. Gentry-Shelton did not object to this statement at trial nor seek an admonishment or request a mistrial. He is prohibited from raising this claim for the first time on appeal. This issue is waived for review. *See Isom*, 31 N.E.3d at 482.

turns on our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Id.* at 1225. The burden is on the defendant to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

## A. Nature of the Offense

[20] We first observe "the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The advisory sentence for Gentry-Shelton's two Level 3 felony convictions is nine years with a range of between three years and sixteen years. Ind. Code § 35-50-2-5 (2014). Gentry-Shelton received concurrent sentences of fourteen years – above the advisory sentence but less than the maximum permissible sentence.

[21] The nature of the offense refers to a defendant's actions in comparison with the elements of the offense. *Cardwell*, 895 N.E.2d at 1224. When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider "whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 806-07 (Ind. Ct. App. 2011).

[22] In this appeal other than acknowledging that the offenses for which he was convicted "are serious," Appellant's Br. p. 21, Gentry-Shelton tells us nothing about why the nature of the offenses justify a revision of his sentence. Instead he asserts "that a fair appraisal of the nature of the offense in question, as well as the consideration of the totality of the circumstances would have resulted in a different sentence imposed." *Id.* at 22.

[23] The record shows Gentry-Shelton was charged with robbery and criminal confinement as Level 3 felonies because his acts were "committed while armed with a deadly weapon." Appellant's App. Vol. 2 pp. 90, 92; *see also* Ind. Code §§ 35-42-5-1 (robbery), 35-42-3-3(b)(3)(A) (criminal confinement). But he was not *just* "armed with a deadly weapon." Instead, Gentry-Shelton held that weapon to the head of a crying and hysterical young woman threatening to shoot her if she did not shut up. All the while his cohorts were ransacking the home and destroying property. This conduct was egregious and went beyond "the 'typical' offenses accounted for by the legislature when it set the advisory sentence." *Holloway*, 950 N.E.2d at 807. The nature of the offense does not justify a revision of the sentence.

### B. Character of the Offender

[24] The "character of the offender" standard in Appellate Rule 7(B) refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. *Williams v. State*, 782 N.E.2d 1039, 1051 (Ind. Ct. App. 2003), *trans. denied*. "A defendant's life and conduct are illustrative of his or her character." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans.*

*denied*. When considering the character of the offender one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). "The significance of a criminal history . . . varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Id.* And we have held that "[e]ven a minor criminal record reflects poorly on a defendant's character." *Reis v. State*, 88 N.E.3d 1099, 1105 (Ind. Ct. App. 2017).

[25] As with the nature of the offense prong of Rule 7(B), Gentry-Shelton likewise tells us nothing about his character or why it justifies revision of his sentence. We repeat for emphasis that the defendant bears the burden of persuading this Court that his or her sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

[26] At the sentencing hearing the court found as aggravating circumstances Gentry-Shelton's juvenile and adult record, which included failed attempts at rehabilitation, and the fact that he was on probation at the time of these offenses. The trial court elaborated:

> Your criminal record covers [a] period of time from 2011 to 2019, with informal adjustments through the juvenile court system, with administrative probation, two (2) adjudications as juvenile with operational supervision, the learning academy, the detention alternative program with the anklet, and drug treatment. As an adult you have one misdemeanor and three (3) prior felony convictions with short jail sentences, longer jail sentences, probation, treatment attempts, time in the Department of Correction, and I note specifically an escalation of your criminal offenses. I find that there are no mitigating circumstances.

Tr. Vol. 3 pp. 9-10.

[27] Although only nineteen years of age at the time of the current offenses, Gentry-Shelton had accumulated two Juvenile adjudications, one of which would have been a felony if committed as an adult, one misdemeanor conviction and three felony convictions. *See* Appellant's App. Vol. 2 pp. 174-76. Continuing to commit crimes after frequent contacts with the judicial system is a poor reflection on one's character. *Rutherford*, 866 N.E.2d at 874; *see also Conner v. State*, 58 N.E.3d 215, 221 (Ind. Ct. App. 2016) (continued crimes indicate a failure to take full responsibility for one's actions). Gentry-Shelton has not persuaded us that the sentence imposed by the trial court is inappropriate in light of his character.

# Conclusion

[28] We affirm the judgment of the trial court.

Baker, J., and Tavitas, J., concur.