

FILED

May 31 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Peter C. Soldato
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mitzy J. Romero,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 31, 2019<br><br>Court of Appeals Case No.<br>19A-CR-39<br><br>Appeal from the Elkhart Circuit<br>Court<br><br>The Honorable Michael A.<br>Christofeno, Judge<br><br>Trial Court Cause No.<br>20C01-1801-F3-6 |

**Crone, Judge.**

## Case Summary

[1]     Mitzy J. Romero appeals her conviction for level 3 felony robbery while armed
        with a deadly weapon.  She asserts that the trial court erred in denying her
        motion for judgment on the evidence because the State failed to prove that she

took property from the victim. Because robbery may be proven with evidence establishing that a defendant took property from another person or from the presence of another person, we conclude that the evidence is sufficient to support her conviction, and therefore we affirm.

## Facts and Procedural History

On October 10, 2017, seventeen-year-old C.M. saw a Facebook post authored by her friend Lashi Lewis, advertising that Lewis wanted to sell an iPhone for $180.00. C.M. commented on the post that she was interested in buying the phone. Lewis contacted C.M. through a private Facebook message, and the two agreed to meet at the Life School in Elkhart after C.M. got off work. During their communication, Lewis asked whether C.M. would be coming by herself or with another person. C.M. told Lewis that she would be alone. Shortly before the meeting was to take place, Lewis telephoned C.M. to change the meeting location to Studebaker Park in Elkhart.

When C.M. arrived at the park, she parked next to Lewis's car. C.M. observed Lewis and a passenger in Lewis's car. C.M. and Lewis exited their vehicles. Lewis told C.M. that she did not have the phone with her but that her boyfriend had it and he wanted a picture of the money. C.M. thought that was strange and initially declined to give Lewis the money. About five minutes passed, and Lewis said, "[M]y boyfriend's not coming unless I send him a picture of the money." Tr. Vol. 2 at 79. C.M. gave Lewis $180.00 in cash so that Lewis could take a picture of it. Lewis placed the money on the hood of her car.

Lewis took out her phone to take a picture, but it seemed to C.M. that Lewis was just pretending to take the picture.

[4] C.M. began to consider how she was going to get her money back from Lewis. Lewis grabbed the money off the car hood and Lewis's passenger exited the vehicle. The passenger pointed a handgun at Lewis, and said, "[G]ive me the money, bro." *Id.* at 80. The passenger was wearing a hoodie, and although the hood obscured the person's face, C.M. recognized the voice as Romero's. Romero attended the same school as C.M. and Lewis, and C.M. knew that Lewis and Romero were friends. By that time, C.M. realized that "something was gonna happen" and thought, "you guys gotta be kidding me right now." *Id.* at 80. C.M. was "really mad" because she knew she was "about to get robbed." *Id.* at 81. Lewis asked Romero, "[A]re you serious, bro?" *Id.* Lewis handed Romero the money, and Romero ran toward a nearby elementary school. Lewis told C.M. that she was going after Romero and to wait for her. However, C.M. thought it best to leave. As she was driving home, she phoned her mother and told her that she had been robbed. *Id.* at 83. C.M.'s mother called the police.

[5] Police interviewed C.M. and Lewis. Sometime after Lewis was interviewed, her mother contacted C.M.'s mother and paid her $180.00, all without C.M.'s knowledge.

[6] On January 8, 2018, the State charged Romero with level 3 felony robbery while armed with a deadly weapon, alleging that she "did knowingly take

property, to wit: US currency, from another person, to wit: C.M., by using or threatening the use of force on any person, while [Romero] was armed with a deadly weapon, to wit: a gun." Appellant's App. Vol. 2 at 16. On May 24, 2018, Romero filed a notice of alibi claiming that at the time the crime occurred she was with her boyfriend.

[7] At trial, Lewis testified for the State about her involvement in three similar thefts following the incident with C.M. After the State rested, Romero's boyfriend and his mother testified that Romero had been with them at their residence at the time C.M. was robbed. Tr. Vol. 3 at 31-34, 51-53. The following morning, outside the presence of the jury, Romero moved for a directed verdict, arguing that the State failed to introduce evidence establishing that Romero took money *from* C.M. The State moved to amend the charging information. After hearing argument, the trial court denied Romero's motion and granted the State's. The amended information alleges in relevant part that "Romero did knowingly take property, to wit: U.S. currency, from another person *or the presence of another person*, to wit: C.M." Appellant's App. Vol. 2 at 49 (emphasis added); Tr. Vol. 3 at 86. Trial resumed, and Romero testified. At the close of all the evidence, Romero did not renew her motion for directed verdict. The jury found Romero guilty as charged, and the trial court sentenced her to eleven years. This appeal ensued.

## Discussion and Decision

[8] Romero argues that the trial court erred in denying her motion for directed verdict, also known as a motion for judgment on the evidence. Further,

Romero contends that we should consider only the evidence that had been presented at the time she made the motion rather than all the evidence.

[9] Motions for judgment on the evidence are governed by Indiana Trial Rule 50(A), which provides in relevant part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.
>
> ….
>
> (6) A motion for judgment on the evidence made at one stage of the proceedings is not a waiver of the right of the court or of any party to make such motion on the same or different issues or reasons at a later stage …, *except that error of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted*.

(Emphasis added.)

[10] "A motion for judgment on the evidence challenges the legal sufficiency of the evidence." *Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 75 (Ind. Ct. App. 2010), *trans. denied*.

> The standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. Judgment on the evidence is appropriate "[w]here all or some of the issues … are not

supported by sufficient evidence." Ind. Trial Rule 50(A). A reviewing court looks only to the evidence and the reasonable inferences drawn most favorable to the non-moving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper.

*Cavens v. Zaberdac*, 849 N.E.2d 526, 529 (Ind. 2006) (citations omitted).

[11] In determining whether judgment on the evidence would have been proper, the scope of the evidence we consider on appeal is a function of how the defendant proceeded at trial after the motion is denied. In *Farmers*, this Court closely examined the text of Trial Rule 50, the official commentary to subsection (A), and Rule 50(A)'s advisory notes, and articulated the following framework for appellate review when a trial court denies a motion for judgment on the evidence:

> [I]f a defendant unsuccessfully moves for a judgment on the evidence at the close of the plaintiff's case-in-chief, presents his own additional evidence thereafter, but renews his motion at the conclusion of all evidence, the motion is preserved in the traditional sense and is reviewed in light of only the evidence introduced during the plaintiff's case-in-chief. This explains why it is advantageous for the defendant to renew the motion. Where the defendant moves for judgment on the evidence at the close of the plaintiff's case-in-chief, presents his own evidence thereafter, but fails to renew the motion at the conclusion of all evidence, the motion is not completely "waived," because renewal is not a requirement under Rule 50. However, the motion must be reviewed in light of all evidence presented during the trial, because any evidence offered by the defendant may cure an

otherwise erroneous denial of his motion for judgment on the evidence. Appellate review of the motion essentially becomes review for sufficiency of the evidence.

926 N.E.2d at 76.[1]

[12] Here, Romero introduced additional evidence after her motion was denied and did not renew her motion at the close of evidence, and therefore we review her claim in light of all the evidence presented at trial. Her sole argument is that the State failed to introduce any evidence that she took the money *from* C.M. and that the evidence shows that she took the money from Lewis. However, Romero does not challenge the trial court's decision to grant the State's motion to amend the charging information. Therefore, to convict Romero of level 3 felony robbery, the State was required to prove beyond a reasonable doubt that Romero knowingly took money *from or from the presence of C.M.* by using or threatening the use of force on any person while armed with a deadly weapon. Appellant's App. Vol. 2 at 49; *see also* Ind. Code § 35-42-5-1(a) ("[A] person

---

[1] Regarding to the official commentary to Trial Rule 50(A) and the advisory notes, the *Farmers* court noted,

> A motion for a directed verdict made at the conclusion of evidence submitted by one of the parties was required to have been renewed at the conclusion of all the evidence under prior Indiana law. *Long v. Archer*, 1943, 221 Ind. 186, 46 N.E.2d 818. Although this doctrine is not continued by the new rule, the practice is wise because evidence admitted after a motion for a directed verdict (now, judgment on the evidence) is made may correct the error of the court in overruling the motion, as provided in the last sentence of this subdivision.

1970 Civil Code Study Commission Comments, *reprinted in* 3 William F. Harvey, *Indiana Practice: Rules of Procedure Annotated* 459 (3d ed. 2002). Rule 50(A)'s advisory notes clarify that a motion for judgment on the evidence need not be renewed after presentation of all the evidence, but that the practice is "wise" because evidence introduced after the motion "may correct" the error of the court in denying it.

926 N.E.2d at 76.

who knowingly or intentionally takes property from another person or from the presence of another person, (1) by using or threatening the use of force on any person or (2) by putting any person in fear, commits robbery," which, if committed while armed with a deadly weapon, is a level 3 felony).

[13] Romero argues only that the State failed to prove that she took money *from* C.M. and makes no argument that the State failed to prove that she took money *from the presence of* C.M. Therefore, any claim in this regard is waived. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("[A] party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*; Ind. Appellate Rule 46(A)(8) (stating that appellant's brief must contain contentions on issues presented and that each contention must be supported by cogent reasoning and citations to authorities and statutes relied on).

[14] Waiver notwithstanding, a challenge to the sufficiency of the evidence would fail. At trial, Lewis and C.M. testified that the money belonged exclusively to C.M. at the time of the robbery. Tr. Vol. 2 at 147, 168. The sale of the iPhone had not yet occurred. C.M. was in very close physical proximity to the money throughout the incident, and the money was out in the open the entire time. In fact, C.M. had just handed the money to Lewis and only for the limited purpose of permitting Lewis to take a picture of it. This evidence is sufficient to establish that Romero took money from the presence of C.M. *See Highbaugh v. State*, 773 N.E.2d 247, 251 (Ind. 2002) (finding evidence sufficient to prove that defendant took bag of marijuana from or from the presence of victim where

defendant shot and killed victim in the foyer of home victim was buying on contract with another person and marijuana was found in ashtray in basement where victim was immediately before shooting); *cf. Benavides v. State*, 808 N.E.2d 708, 712-13 (Ind. Ct. App. 2004) (finding evidence insufficient to prove that defendant took money from or from the presence of second victim, even though some money came from sale of second victim's car and his job, where second victim was in a different room and first victim took money from *her purse* to give to defendant), *trans. denied*. Accordingly, we conclude that Romero is not entitled to judgment on the evidence, and we affirm her conviction.[2]

Affirmed.

Bradford, J., and Tavitas, J., concur.

---

[2] Although it is not necessary to our conclusion, we note that the State presented substantial evidence that Lewis was Romero's accomplice and that the sole reason Lewis had the money in her hand when Romero demanded it at gunpoint was because Lewis was involved in the crime.